UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

In re                                       ) Case No. _____
                                            )
                                            ) NOTICE OF MOTION FOR
                                            ) RELIEF FROM AUTOMATIC
                                            ) STAY IN A CHAPTER 11/12 CASE,
Debtor(s)                                   ) AND OF HEARING THEREON

**YOU ARE NOTIFIED THAT**:

1. A motion was filed by, _____, for the relief from the automatic stay protecting the debtor(s) and debtor's property, as provided by 11 USC §362.

2. The name and address of the moving party's attorney (or moving party, if no attorney) are:



3. If you wish to resist the motion you must, within 14 days of the service date shown below, file a written response with the Clerk of the Bankruptcy Court and, if served in paper, a certificate showing a copy of the response has been served on the moving party's attorney.

4. <u>Contents of Response</u>.  A response must state the facts upon which relief from the automatic stay is resisted. See Local Form #720.50 for details.

5. **If you file a timely Response**:

    A Hearing on the motion will be held as follows:

    **Date**:_____          **Time**:_____

    **Location**:  ☐   Courtroom #_____ , _____

                   ☐   Telephone Hearing  [**NOTE**: See LBF #888, Telephone Hearing Requirements]
                        **Call In Number:**      (888) 684-8852
                        **Access Code:**         ☐ 8622907 for Judge Frank R. Alley (fra)
                                                 ☐ 4950985 for Judge Trish M. Brown (tmb)
                                                 ☐ 5870400 for Judge Randall L. Dunn (rld)
                                                 ☐ 1238244 for Judge Peter C. McKittrick (pcm)
                                                 ☐ 3388495 for Judge Thomas M. Renn (tmr)
                                                 ☐ Other_____

    NO TESTIMONY will be taken at the hearing.

6. **If a timely response is not filed**, then either:

    a. The court may sign an ex parte order, submitted by the moving party, granting relief from the stay;

    <u>or</u>  b. The stay will expire under the terms of 11 USC §362(e) 30 days after the motion was filed.

                CLERK, U.S. BANKRUPTCY COURT
                (If filing in paper and if the 5-digit portion of the Case No. begins with "3" or "4", mail to 1001 SW 5th Ave. #700, Portland OR 97204; <u>or</u> if it begins with "6" or "7", mail to 405 E 8th Ave #2600, Eugene OR 97401)

I certify that on _____ copies of (1) this Notice, (2) Local Form #720.50 if this Notice was served on paper, (3) Local Form #888 if this Notice was served on paper and a Telephone Hearing will be held,  and (4) the Motion, were served on the Debtor(s), U.S. Trustee, and on the following parties, if any:  Trustee, Creditors' Committee Chairperson, and their respective attorneys.

                                                                    _____
                                                                    Signature of Moving Party or Attorney

1124 (1/12/15)

HILLIS CLARK MARTIN & PETERSON P.S.  
1221 Second Avenue, Suite 500  
Seattle, Washington 98101-2925  
Telephone: (206) 623-1745  
Facsimile: (206) 623-7789  

Hon. Randall L. Dunn  
Chapter: 11  
Location: Portland  

Attorneys for Secured Creditor  
Umpqua Bank  

UNITED STATES BANKRUPTCY COURT  
FOR THE DISTRICT OF OREGON  
AT PORTLAND  

In re:

EVERGREEN VINTAGE AIRCRAFT, INC.,

Debtor.

No.: 14-36770-rld11

**UMPQUA BANK'S MOTION FOR RELIEF FROM STAY**

## I. INTRODUCTION

Debtor Evergreen Vintage Aircraft, Inc. ("*Debtor*" or "*EVA*") is a holding company that owns aircraft and real property for the benefit of other related entities. It has only one employee—the company bookkeeper who was elevated to president days before the filing of this case. EVA has no reported ongoing income, and staggering debts: EVA reports $153 million in debt, which includes more than $50 million in secured debt.

Umpqua Bank holds first-position security interests in vintage aircraft that Debtor was trying to sell for more than a year. EVA filed its bankruptcy petition on the eve of Umpqua's UCC foreclosure sale of these vintage aircraft, in an attempt to stop Umpqua from exercising the default remedies to which EVA agreed. Umpqua should be granted relief to sell the aircraft, as EVA has no equity in this property and it not necessary for an effective reorganization. The Debtor's schedules place the aircraft's actual value between $8 million

UMPQUA BANK'S MOTION FOR RELIEF FROM STAY- 1

HILLIS CLARK MARTIN & PETERSON P.S.  
1221 Second Avenue, Suite 500  
Seattle, Washington 98101  
Telephone: (206) 623-1745  
Facsimile: (206) 623-7789

and $16 million, while the aircraft secure more than $41 million in cross-collateralized debt owing to Umpqua Bank and an additional $9.1 million to World Fuel, Inc. By any measure, the Debtor has no equity in these aircraft.

The aircraft are also not necessary for any potential reorganization the Debtor may undertake. Indeed, it is highly unlikely that this Debtor will be able to effectively reorganize. It has no cash, no active lease that would generate revenue, and no identified sources of new funding. Umpqua Bank will oppose any cramdown plan the Debtor may propose, and, indeed, it is impossible to see how creditors would support any plan under these circumstances. In any event, the Debtor's own actions in marketing the aircraft demonstrate that they are not part of the Debtor's future plans.

Umpqua Bank has found a buyer ready to purchase the aircraft for $11.8 million. The buyer has conducted its due diligence on the planes, and funded $11.8 million into escrow. This buyer, however, requires the sale to close promptly, and it is in the best interest of creditors and the estate to do so. This transaction is the product of an extensive promotional effort in an inherently limited market, and the proposed purchase price is within the range of values set out in the Debtor's own schedules. If EVA further delays this sale, the best (and possibly only) opportunity to extract value out of these aircraft will be lost.

Accordingly, Umpqua Bank respectfully requests relief from the automatic stay to foreclose its security interests in the aircraft identified in Schedule B-27 as its collateral. 11 U.S.C. § 362(d)(2).

## II. EVIDENCE RELIED UPON

This Motion relies on the concurrently-filed Declaration of Jerome Ing in Support of Motion for Relief from Stay (the "***Ing Decl***."), the Declaration of Brian Free in Support of Motion for Relief from Stay (the "***Free Decl***."); the Declaration of Joseph A.G. Sakay in Support of Motion for Relief from Stay (the "***Sakay Decl.***"), and all other documents on file in this action.

*Umpqua Bank's Motion for Relief from Stay* - 2

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue, Suite 500
Seattle, Washington 98101
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

### III. STATEMENT OF FACTS

#### A.  Evergreen Vintage Aircraft, Inc. background

EVA is one of many Delford Smith entities. For years, Mr. Smith owned and operated numerous airlines and airline-related companies. Later in life, Mr. Smith created a number of entities to pursue his interest in vintage aircraft, including EVA, Ventures Acquisition Company, LLC, and Ventures Holdings, Inc. (together, the **"*Vintage/Ventures Companies*"**). The Vintage/Ventures Companies operated in McMinnville, Oregon, and they own aircraft and real property for the benefit of related entities. For example, EVA owns the real property commonly known as 500 NE Captain Michael Smith (the "*Museum Building*"), from which the Evergreen Aviation and Space Museum (the "*Museum*") operates. EVA also owns vintage aircraft, some of which are displayed by the Museum.

From 2005 through 2011, the Vintage/Ventures Companies obtained funding from Umpqua totaling loans in excess $50 million (together, the **"*Loans*"**), many of which were cross-collateralized. As part of this process, EVA received a $14 million loan secured by a deed of trust, assignment of rents, and security agreement related to the Museum Building, (Free Decl. Exs. E, F, G) and security agreements against vintage planes. (*Id.* Exs. M, N, O.)

#### B.  EVA defaults on its loan and negotiates forbearance terms

In recent years, Mr. Smith's entities encountered significant financial trouble. His main airline, Evergreen International Airlines, Inc., was forced into involuntary bankruptcy in December 2013 after failing to pay its creditors.[1] Similarly, in 2013, EVA and the remaining Vintage/Ventures Companies, defaulted on the Loans by, among other things, failing to pay property taxes when due and failing to pay the required monthly payments under many of the Loans. (Free Decl. Ex. A at ¶ BB.)

---

[1] The Evergreen International Airlines Chapter 7 bankruptcy in Delaware, 13-13364-MFW, does not include collateral at issue in this bankruptcy or this motion.

*Umpqua Bank's Motion for Relief from Stay* - 3

**HILLIS CLARK MARTIN & PETERSON P.S.**
1221 Second Avenue, Suite 500
Seattle, Washington 98101
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

1   In an effort to obtain more time to cure their defaults and restructure the Loans, the
2   Vintage/Ventures Companies negotiated multiple forbearance agreements with Umpqua in
3   2013 and 2014 that further cross-collateralized and cross-defaulted all of the Loans.
4   Specifically, the parties negotiated the Forbearance and Settlement Agreement and
5   Amendment to Loan Documents dated for reference purposes March 5, 2013 and its First
6   Amendment dated as of March 29, 2013.  (Free Decl. Exs. A-B).  After the Vintage/Ventures
7   Companies defaulted on that agreement, Umpqua further extended the forbearance terms
8   under a Second Amendment to the Forbearance Agreement.  (*Id.* Ex. C.)  The
9   Vintage/Ventures Companies then defaulted on *that* agreement, and Umpqua again extended
10  the forbearance terms under a Third Amendment to the Forbearance Agreement.  (*Id.* Ex. D.)
11  The Agreement together with its First, Second, and Third Amendments are referred to
12  collectively in this motion as the "***Forbearance Agreement***".

13   Under the Forbearance Agreement, Umpqua agreed to not exercise its default
14  remedies until September 30, 2014, the date upon which the total amount of the Loans was
15  due.  (*Id.* Ex. D, (Third Amendment) at ¶ 3.3.)  Umpqua also restructured some of the Loan
16  obligations, including reducing certain interest rates (*e.g.*, *Id*. Ex. A at 2.1.1.4.)  In exchange,
17  the Vintage/Ventures Companies further cross-defaulted their respective loans with Umpqua
18  and further cross-collateralized the Loans' collateral.  (*Id*. Ex. A at 2.4, 2.6.;
19  Exs. M-O, I-L, P).  The Vintage/Ventures Companies also pledged seven additional vintage
20  aircraft as collateral for the Loans. (*Id*., I, J, K, L, P).  Currently, there are 15 vintage aircraft
21  owned by EVA (defined in this motion as the "***Vintage Aircraft***") that are the subject of this
22  motion.  For ease of reference, the Vintage Aircraft are identified in Exhibit A to this motion.
23  The Free Declaration attaches the security instruments for these aircrafts. (Free Decl.
24  Exs. I-W.)

*Umpqua Bank's Motion for Relief from Stay* - 4

1  After the Second Amendment, the Loans were accelerated.  (*Id*. Ex. D (Third

2  Amendment) at ¶ B.)  As of the date of the Third Amendment, the combined principal amount

3  due and owing on the Loans totaled more than $37 million.  (*Id.*)

**C.  EVA defaults on the Forbearance Agreement.**

The Vintage/Ventures Companies have since defaulted upon the Forbearance Agreement.  As of September 30, 2014, the Vintage/Ventures Companies, including EVA, failed to pay the more than $41 million due and owing under the terms of the Loans.  (Ing Decl. ¶ 2.)  Accordingly, Umpqua proceeded with the default remedies negotiated under the loan documents and the Forbearance Agreement.  Among other actions, Umpqua began efforts to identify purchasers for the Vintage Aircraft, a number of which EVA had for years been unsuccessfully attempting to sell.  (*Id*. ¶¶ 4-8.)  Throughout the forbearance periods and workouts, Umpqua frequently communicated with EVA about EVA's efforts to sell the Vintage Aircraft.  Among other efforts, EVA had engaged the self-identified "World's Premier Aircraft Broker," Platinum Fighter Sales, Inc., to sell select planes.  (*Id.*¶ 4)  EVA also discussed extending exclusive sale agreements with other brokers if they could identify buyers for the Vintage Aircraft.  (*Id.*)  In addition, EVA or its broker had conversations with a number of potential buyers, including Paul Allen, the Yanks Air Museum, the Historic Flight Foundation, the Military Aviation Museum, and numerous other institutions and private individuals with an interest in antique aircraft.  (*Id.*)  By January 2014, EVA was attempting to sell all the Vintage Aircraft. (*Id.*)

**D.  Umpqua also seeks purchasers for the Vintage Aircraft.**

EVA proved unable or unwilling to sell *any* of the Vintage Aircraft.  Because EVA had sold none of the Vintage Aircraft, in the Spring of 2014, Umpqua began with EVA's consent to identify potential purchasers for the planes.  (*Id.* ¶ 6.)  After EVA and the other Vintage/Ventures Companies went into default on their obligations under the Forbearance Agreement, even after being given three extensions, Umpqua concluded that it would have to

*Umpqua Bank's Motion for Relief from Stay - 5*

**HILLIS CLARK MARTIN & PETERSON P.S.**
1221 Second Avenue, Suite 500
Seattle, Washington 98101
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

enforce its security interests by disposing of the Vintage Aircraft pursuant to the UCC. Following EVA's lead, Umpqua sought interested parties who might purchase the Vintage Aircraft at a private sale.  Through its Vice President and Special Assets Officer Jerome Ing, Umpqua communicated with numerous aircraft brokers and liquidators, including:

- Starman Auctions;
- Courtesy Aircraft;
- Lockwood Aviation;
- Bob Hannah Aviation;
- David Neyens, a Canadian Warbird marketing specialist; and
- Air Assets International

(*Id.*)  Umpqua also communicated with counsel for the Museum to identify potential purchasers.  (*Id.*)  The bank informed these parties that the Vintage Aircraft would be sold, so they should bring forward any interested parties.  (*Id.*)

In addition to communicating with brokers and liquidators, Umpqua communicated directly with potential purchasers, including the following:

- The Mid America Flight Museum;
- The Aviation Institute of Maintenance;
- The Oregon's Western Antique Aeroplane & Automobile Museum;
- Historical Air Tours, which maintains a museum of operating planes; and
- The Collings Foundation, which maintains a substantial fighter aircraft collection.

(*Id.* ¶7.)

Not surprisingly, the market for vintage fighter aircraft is an extremely limited one. Such aircraft are expensive and difficult to maintain, and only people with very high incomes and equally high interest consider purchasing these types of planes.  Umpqua found that when discussing the Vintage Aircraft with possible purchasers, the parties in this market generally already knew that the planes were for sale and that Del Smith's entities were floundering.

*Umpqua Bank's Motion for Relief from Stay - 6*

**HILLIS CLARK MARTIN & PETERSON P.S.**
1221 Second Avenue, Suite 500
Seattle, Washington  98101
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

1  (*Id.* ¶ 8.)  Further, potential purchasers had significant knowledge about the planes, and had

2  their own sense of value for such aircraft.  (*Id.*)

3        **E.**      **Umpqua negotiates a sale of the Vintage Aircraft.**

4  After speaking with potential purchasers, Umpqua negotiated a sale of all the Vintage

5  Aircraft to Erickson Aviation, LLC.  (*Id.* ¶¶ 9-10.)  Erickson Aviation is owned by Jack

6  Erickson, the founder of Erickson Helicopters.  Mr. Erickson is an avid antique aircraft

7  collector who built and runs an aircraft museum near Bend, Oregon.  (*Id.* ¶ 9.)

8  After negotiation, Umpqua agreed to sell Erickson Aviation the Vintage Aircraft for

9  $11.8 million.  To address various subordinate liens, the sale was split into an $11.2 million

10 sale of eight "Primary Aircraft" and a $600,000 sale of seven "Secondary Aircraft."  (The

11 purchase and sale agreements for the Vintage Aircraft are attached to the Ing Decl. as EXHIBIT

12 A (Primary Aircraft) and EXHIBIT B (Secondary Aircraft).)

13 Erickson Aviation is ready to close the sales of the Vintage Aircraft.   After executing

14 the purchase and sale agreements, Erickson funded $11.2 million into escrow for the Primary

15 Aircraft and $600,000 into escrow for the Secondary Aircraft.  (*Id.* ¶ 13.)  Erickson Aviation

16 has already conducted its due diligence of the Vintage Aircraft, traveling to McMinnville to

17 inspect the Vintage Aircraft and review their records. Erickson confirmed that it is

18 comfortable with the condition of the airplanes and records, and is ready to close.  (*Id.*)

19 In order to close the Erickson sale and pay down the Loans, Umpqua commenced a

20 UCC foreclosure.  Consistent with UCC Article 9-611 to 613, parties with claimed interests in

21 the Vintage Aircraft — including EVA and subordinate lien holders World Fuel Inc. and

22 Skadden Arps — were sent written notification that a sale of the Primary Aircraft would occur

23 on or after December 14, 2014.  (Sakay Decl. Ex. A; Ing Decl. Ex. C.)  After December 14,

24 these parties' subordinate interests would have been discharged.  *See* UCC Art. 9-617(a)(3).

*Umpqua Bank's Motion for Relief from Stay - 7*

**HILLIS CLARK MARTIN & PETERSON P.S.**
1221 Second Avenue,  Suite 500
Seattle, Washington  98101
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

1 **F.     EVA declares bankruptcy to stop Umpqua's UCC sale**

2 On December 11, 2014 — two business days before the UCC foreclosure — EVA filed this bankruptcy.  The Debtor's bankruptcy schedules list a value of the Vintage Aircraft as consistent with Umpqua's proposed sale: Debtor lists a total book value for the Vintage Aircraft of $8,172,360, and insurance value of $14,745,000. (Schedule B-27.[2])  By contrast, the current debt encumbering the Vintage Aircraft exceeds $50 million.  The Umpqua debt exceeds $41 million (Ing. Decl. ¶ 2.), and Debtor also identifies $9 million in World Fuel attachment liens.  (Schedule B-27.)

EVA now has only one employee — the company bookkeeper, who was elevated to president days before the filing this bankruptcy.  (Sakay Decl. ¶ 4.)  The president admits that she is also responsible for additional Del Smith entities (and is or was a bookkeeper for about ten such entities) in addition to being a co-personal representative for the estate of Delford Smith (who passed away in November 2014).  (*Id.*)

In its bankruptcy petition, EVA identifies only one potential source of ongoing income: rents from the Museum Building.  The rents are Umpqua's cash collateral, and Umpqua has not consented to their use by Debtor.  (Free Decl. ¶ F (Assignment of Rents); Sakay Decl. Ex. B.)  Further, the reported $50,000 monthly rate is based on an expired lease, and the Debtor admits that the Museum is unwilling to now pay this rate.  (*Id.* ¶ 5.)  In contrast, EVA identifies debts in excess of $153 million.

## IV.   AUTHORITY AND ARGUMENT

The Court should grant relief from the automatic stay and allow Umpqua Bank to foreclose and sell the Vintage Aircraft. A secured creditor may obtain relief from stay for cause if: (1) the debtor does not have equity in such property; and (2) such property is not necessary to an effective reorganization. 11 U.S.C. § 362(d)(2). Congress added this provision

---

[2] This calculation excludes the Dehavilland DH4M, on which Umpqua does not seek to relief.  A footnote in the Debtor's schedules lists inflated values for the aircraft that are wildly speculative and not based on any appraisals or market analysis.

*Umpqua Bank's Motion for Relief from Stay* - 8

**HILLIS CLARK MARTIN & PETERSON P.S.**
1221 Second Avenue, Suite 500
Seattle, Washington 98101
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

1  to the Bankruptcy Code "as a direct response to situations involving real property mortgage
2  foreclosures where the petition for relief is filed in the Bankruptcy Court on the eve of the
3  foreclosure." *La Jolla Mortgage Fund v. Rancho El Cajon Assocs.*, 18 B.R. 283, 289-90
4  (Bankr. S.D. Cal. 1982). The effect of this section "is to allow creditors to immediately
5  proceed against the property where the debtor has no equity, and it is unnecessary to the
6  reorganization, even where the debtor can provide adequate protection under Section
7  362(d)(1)." *Id.*

8  This case presents the very circumstance that concerned Congress when it enacted
9  Section 362(d)(2). Umpqua Bank had to cancel its UCC foreclosure sale because the Debtor
10 commenced this bankruptcy case on the eve of the sale. The Debtor has no equity in the
11 Vintage Aircraft, and they are not necessary to an effective reorganization.

12            **A.     EVA Has No Equity in Vintage Aircraft.**

13 A debtor lacks equity in property when the debts secured by liens on the property
14 exceed its value. *Stewart v. Gurley*, 745 F.2d 1194, 1195 (9th Cir. 1984). The analysis under
15 Section 362(d)(2) focuses only on the value of the specific property at issue. Equity cushions
16 in other available collateral are irrelevant: "while the concepts of equity cushions and
17 adequate protection are relevant for section 362(d)(1), where one looks to the adequate
18 protection of the creditor, there is no mention of these concepts in section 362(d)(2)." *In re*
19 *New Era Co.*, 125 B.R. 725, 729 (S.D. N.Y. 1991). Indeed, courts in this circuit have
20 specifically rejected the notion "that a creditor, having successfully met its burden under
21 Section 362(d)(2)(A), …, and having successfully met the debtor's challenge under Section
22 362(d)(2)(B), may still be foreclosed from relief by Section 362(d)(1)." *In re Faires*, 34 B.R.
23 549, 553 (Bankr. W.D. Wash. 1983).

24 In this case, the estate has no equity in the Vintage Aircraft. The Debtor's own
25 bankruptcy schedules list a total book value for the Vintage Aircraft of $8,172,360, and
26 insurance value of $14,745,000. (Schedule B-27.) EVA has no employees who even know

1  the bases of these values. (Sakay Decl. ¶ 5.) Umpqua Bank's potential sale at $11.8 million
2  corroborates the range of values in the Debtor's schedule. Any discrepancy between EVA's
3  figures is ultimately immaterial because none establish a value anywhere near the more than
4  $50 million in total debt secured by the aircraft—more than *three times* the Debtor's highest
5  reported value. By any measure, the estate has no equity in the Vintage Aircraft.

6           **B.**      **The Vintage Aircraft Are Not Necessary to an Effective Reorganization.**

7      The second factor for relief from stay under Section 362(d)(2) is also satisfied here. A
8  debtor bears the burden of proving that its property is necessary to an effective reorganization.
9  11 U.S.C. §§ 362(d)(2)(B) and 362(g). The threshold question in this analysis is whether
10 there is a "reasonable possibility of a successful reorganization within a reasonable time."
11 *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd. (In re Timbers of Inwood*
12 *Forest Assocs., Ltd.)*, 484 U.S. 365, 375-76 (1988). A reorganization plan that is "wholly
13 speculative" and that cannot be confirmed does not constitute an effective reorganization. *See*
14 *Wiersma v. O.H. Kruse Grain & Milling (In re Wiersma),* 324 B.R. 92, 112 (9th Cir. BAP
15 2005).

16     There is no possibility of an effective reorganization here. According to the Debtor's
17 own schedules, it has no cash and no leases. The debt service on the Loans alone, at the non-
18 default rate, exceeds $180,000 per month. (Ing Decl. ¶ 2.) It is unclear how the Debtor could
19 meet this expense, other operating expenses, and its administrative expenses given the
20 absence of a viable source of revenue. Indeed, the Debtor's negative cash flow and
21 diminution of estate value would justify dismissal of this case. *See* 11 U.S.C. § 1112(b). At a
22 minimum, this is a grim picture that casts serious doubt on the Debtor's ability to obtain new
23 financing and reorganize. The Debtor has recently suggested that a new "plan sponsor" will
24 fund its reorganization, but the Debtor has yet to reveal any plan from such a white knight.
25 Given the Debtor's dire financial picture, it is highly unlikely that the Debtor has any savior
26 willing and able to commit the resources necessary for an effective reorganization.

*Umpqua Bank's Motion for Relief from Stay* - 10

This means the Debtor will most likely propose a cram-down plan severe enough to put its anemic and heavily leveraged operation in the black. Umpqua Bank already faces the prospect of a substantial and unrecoverable deficiency; it will not vote for any cram-down plan. The Debtor will therefore have to impair at least one other class and win its support. The other secured creditor has yet to appear, and there is no evidence it would support the type of severe cram-down plan required here. There is also no evidence that non-insiders in the general unsecured creditor class would support such a plan. There is no hope of reorganization.

The Debtor's actions also demonstrate that it does not intend to keep the Vintage Aircraft in the future. Because EVA sought to sell the Vintage Aircraft, it cannot now be heard to claim that it needs this collateral for an effective reorganization. The second element under Section 362(d)(2) also supports relief from stay.

## V. CONCLUSION

Umpqua Bank has a buyer ready to close a sale at a price that is within the range of values set out in the Debtor's submission. This sale is the product of a substantial marketing effort, and it is the best and only binding offer received for the aircraft. The estate has no equity in the Vintage Aircraft, and they are not necessary for an effective reorganization. The Court should grant Umpqua Bank's motion for relief from stay.

*Umpqua Bank's Motion for Relief from Stay* - 11

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue, Suite 500
Seattle, Washington 98101
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

1    DATED this 23rd day of January, 2015.

                                HILLIS CLARK MARTIN & PETERSON P.S.

                   By */s/Joseph A.G. Sakay*
                       Joseph A.G. Sakay, OSB #021734
                       Brian C. Free, OSB #142077
                       Eric D. Lansverk, OSB #144700
                       Hillis Clark Martin & Peterson P.S.
                       1221 Second Avenue, Suite 500
                       Seattle, Washington  98101-2925
                       Tel.: (206) 623-1745 Fax: (206) 623-7789
                       E-Mail: joe.sakay@hcmp.com;
                       brian.free@hcmp.com; eric.lansverk@hcmp.com
             Attorneys for Umpqua Bank

*Umpqua Bank's Motion for Relief from Stay* - 12

**HILLIS CLARK MARTIN & PETERSON P.S.**
1221 Second Avenue,  Suite 500
Seattle, Washington  98101
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

# Exhibit A

1) Pitts Aerobatics S-2B with FAA Registration No. N5352E and Serial No. 5105.

2) Curtiss Wright A22 Falcon with FAA Registration No. N500G and Serial No. A22-1.

3) Curtiss/Whittington Bros. P-40 Kittyhawk with FAA Registration No. N293FR and Serial No. FR293.

4) Vickers Supermarine Spitfire Mark XVI with FAA Registration No. N356TE and Serial No. TE356.

5) Boeing B-17 with FAA Registration No. N207EV.

6) Lockheed P-38L- with FAA Registration No. N505MH.

7) Messerschmitt Bf-109G with FAA Registration No. N109 EV.

8) North American T-28B Trojan with FAA Registration No N28EV (formerly N394W) and Serial No 138334.

9) Piper J3L-65 "Cub" with FAA Registration No. N46471 and Serial No. G31.  (FAA Registration Expired)

10) North American SNJ-4 with FAA Registration No. N33CC and Serial No. 88-13466. (FAA Registration Expired)

11) Boeing E75 Stearman with FAA Registration No. N450UR and Serial No. 75-5300. (FAA Registration Expired)

12) Curtiss Wright "Air Sedan" with FAA Registration No. N12314 and Serial No. 15-D-2214. (FAA Registration Expired)

13) Hughes 269A with FAA Registration No. N79P and prior FAA Serial No. 38-002. (FAA Registration Expired)

14) Curtis Jenny (non-flying replica, no FAA registration or serial number).

15) Hiller UH-12E with FAA Registration No. N5363V and Serial No. 2049. (FAA Registration Expired)

ND: 20411.005 4822-8116-9441v2

*Umpqua Bank's Motion for Relief from Stay* - 13

**HILLIS CLARK MARTIN & PETERSON P.S.**
1221 Second Avenue,  Suite 500
Seattle, Washington  98101
Telephone: (206) 623-1745
Facsimile: (206) 623-7789