**Nicholas J. Henderson, OSB#074027**
nhenderson@portlaw.com
Motschenbacher & Blattner, LLP
117 SW Taylor St., Suite 200
Portland, OR 97204
Telephone: (503) 417-0508
Facsimile: (503) 417-0528

Attorneys for Debtor Evergreen Vintage Aircraft, Inc.

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF OREGON

| | |
|---|---|
| In re: | Case No. 14-36770-rld11 |
| EVERGREEN VINTAGE AIRCRAFT, INC. | DEBTOR'S DISCLOSURE STATEMENT DATED DECEMEBR 4, 2015 |
| Debtor. | |

## TABLE OF CONTENTS

I.     INTRODUCTION.................................................................................................1

   A.     Purpose of This Document...........................................................................1

   B.     Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing ..................1

     1.     Time and Place of the Hearing to Confirm the Plan .................................1

     2.     Deadline For Voting to Accept or Reject the Plan....................................1

     3.     Deadline For Objecting to Confirmation of the Plan ................................2

     4.     Identity of Person to Contact for More Information ..................................2

   C.     Disclaimer.................................................................................................2

II.     BACKGROUND..................................................................................................2

   A.     Description and History of the Debtor's Business .........................................2

   B.     Insiders of the Debtor................................................................................2

   C.     Events Leading to Chapter 11 Filing ...........................................................2

   D.     Significant Events During the Bankruptcy Case............................................3

   E.     Projected Recovery of Avoidable Transfers .................................................3

   F.     Claims Objections.....................................................................................3

   G.     Current and Historical Financial Conditions..................................................4

III.     SUMMARY OF THE PLAN OF LIQUIDATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS.........................................................................................4

A.   What is the Purpose of the Plan of Liquidation?...........................................................4

B.   Unclassified Claims .......................................................................................................4

1.   Administrative Expenses.............................................................................................4

2.   Priority Tax Claims ....................................................................................................5

C.   Classes of Claims and Equity Interests .........................................................................5

1.   Classes of Secured Claims .........................................................................................5

2.   Classes of Priority Unsecured Claims........................................................................6

3.   Classes of General Unsecured Claims ........................................................................6

4.   Class of Equity Interest Holders ................................................................................7

D.   Means of Implementing the Plan ...................................................................................7

1.   Source of Payments.....................................................................................................7

2.   Post-confirmation Management ..................................................................................7

E.   Risk Factors ...................................................................................................................7

F.   Executory Contracts and Unexpired Leases ..................................................................8

G.   Tax Consequences of Plan .............................................................................................8

3.   Tax Consequences to the Debtor ................................................................................8

4.   Tax Consequences to Holders of General Unsecured Claims.....................................8

5.   Tax Consequences to Equity Interest Holders ............................................................8

IV.   CONFIRMATION REQUIREMENTS AND PROCEDURES...........................................9

A.   Who May Vote or Object................................................................................................9

1.   What Is an Allowed Claim or an Allowed Equity Interest?........................................9

2.   What Is an Impaired Claim or Impaired Equity Interest? ...........................................9

3.   Who is **Not** Entitled to Vote ......................................................................................9

4.   Who Can Vote in More Than One Class ...................................................................10

B.   Votes Necessary to Confirm the Plan ..........................................................................10

1.   Votes Necessary for a Class to Accept the Plan .......................................................10

2.   Treatment of Non-accepting Classes ........................................................................10

C.   Liquidation Analysis....................................................................................................10

D.   Feasibility.....................................................................................................................10

1.   Ability to Initially Fund Plan ...................................................................................11

2.   Ability to Make Future Plan Payments and Operate Without Further Reorganization...............11

V.   EFFECT OF CONFIRMATION OF PLAN ....................................................................11

A.   NO DISCHARGE OF DEBTOR..................................................................................11

B.   Modification of Plan ....................................................................................................11

C.   Final Decree .................................................................................................................11

# I.     INTRODUCTION

This is the disclosure statement (the "Disclosure Statement") in the Chapter 11 case of Evergreen Vintage Aircraft, LLC (the "Debtor"). This Disclosure Statement contains information about the Debtor and describes the Debtor's Plan of Liquidation dated December 4, 2015 (the "Plan"), filed by the Debtor. A full copy of the Plan is attached to this Disclosure Statement as <u>Exhibit A</u>.

Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.

The proposed distributions under the Plan are discussed at pages 4 through 7 of this Disclosure Statement. General unsecured creditors are classified in Class 3, and will receive a distribution of approximately 28% of their allowed claims. The Class 4 unsecured creditor will receive a distribution of approximately 2.2% of its allowed claim, and the Class 5 unsecured creditor will receive a distribution of approximately 3.66% of its allowed claim. Both Class 4 and Class 5 creditors have agreed to disparate treatment. No other creditors will receive distributions, and Class 8 Equity Holders shall not receive or retain any property under the Plan.

## A.     Purpose of This Document

This Disclosure Statement describes:
- The Debtor and significant events during the bankruptcy case,
- How the Plan proposes to treat claims or equity interests of the type you hold (i.e., what you will receive on your claim or equity interest if the plan is confirmed),
- Who can vote on or object to the Plan,
- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,
- Why the Debtor believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation in Chapter 7, and
- The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

## B.     Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

### 1.     *Time and Place of the Hearing to Confirm the Plan*

The hearing at which the Court will determine whether to confirm the Plan will take place on _____ at _____ before the Honorable Randall L. Dunn in Courtroom #3 of the US Bankruptcy Court located at 1001 SW 5th Ave, 7th Floor, Portland, OR 97204.

### 2.     *Deadline For Voting to Accept or Reject the Plan*

If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to Nicholas J. Henderson, Motschenbacher & Blattner, LLP, 117 SW Taylor St., Suite 300. Portland OR, 97204 See section IV.A. below for a discussion of voting eligibility requirements. **Your ballot must be received by _____ or it will not be counted**.

*3. Deadline For Objecting to Confirmation of the Plan*

Objections to confirmation of the Plan must be filed with the Court and served upon the Debtor by _____.

*4. Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact Nicholas J. Henderson, attorney for the Debtor, at the contact address listed above.

**C. Disclaimer**

The Court has approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted. The Court's approval of this Disclosure Statement is subject to final approval at the hearing on confirmation of the Plan.

**II. BACKGROUND**

**A. Description and History of the Debtor's Business**

The Debtor is an Oregon corporation. The company was incorporated on January 20, 1999. The Debtor was a holding company, which owned real estate that served as the location of the Evergreen Aviation and Space Museum in McMinnville, Oregon. At the time of the filing of the petition, the Debtor owned one parcel of real estate in McMinnville, Oregon, on which two buildings were constructed: 1) a world-class aviation museum building that houses the Spruce Goose, and 2) a large-format theater building. Both buildings and the real estate were leased to the Evergreen Aviation and Space Museum and the Captain Michael King Smith Educational Institute (the "Museum"). The Debtor also owned 26 vintage aircraft, and miscellaneous personal property also located at the Museum facilities.

**B. Insiders of the Debtor**

During the two years prior to the date on which the bankruptcy petition was filed, the Debtor's president, secretary and sole director was Delford M. Smith. Mr. Smith passed away on November 7, 2014. Lisa Anderson was elected as the Debtor's sole director, and appointed as the Debtor's President and Secretary on December 10, 2014.

The President of the Debtor during the Debtor's chapter 11 case continues to be Lisa Anderson. Ms. Anderson has managed the Debtor during the Debtor's chapter 11 case. After the effective date of the order confirming the Plan, Debtor shall be dissolved. Thus, there will only be a brief period of post-confirmation management of the Debtor, which will be by Ms. Anderson, until the distributions have been made pursuant to the Plan, and the chapter 11 case has been closed.

**C. Events Leading to Chapter 11 Filing**

The Debtor filed this case to prevent a foreclosure sale by Umpqua Bank ("Umpqua"), which would have resulted in the sale of 12 of the Debtor's most valuable aircraft holdings. Umpqua asserted a security interest in the bulk of the Debtor's assets, including the Debtor's most valuable aircraft holdings, as well as the Debtor's real property and improvements. At the time of the petition, Umpqua asserted a secured claim against the Debtor in excess of $42,000,000.

## D. Significant Events During the Bankruptcy Case

The following significant events have occurred in this Case:

| Date | Event |
|------|-------|
| 12/11/2014 | Chapter 11 Petition filed (the "Petition Date") |
| 1/23/2015 | Notice and Motion for Relief from Stay filed by Umpqua Bank |
| 3/26/2015 – 4/6/2015 | Multiple-party mediation resulting in agreement to sell the Debtor's assets to third-party buyer for $22,000,000 |
| 4/23/2015 | Debtor filed Notice of Intent and Motion to Settle and Compromise Pursuant to Fed. R. Bankr. Proc. 9019 [Docket No. 71] |
| 4/23/2015 | Debtor filed Notice of Intent to Sell Real or Personal Property at Private Sale, Compensate Real Estate Broker, and/or Pay any Secured Creditor's Fees and Costs; Motion for Authority to Sell Property Free and Clear of Liens; and Notice of Hearing with Certificate of Service [Docket No. 75] |
| 5/19/2015 | Debtor filed Adversary Proceeding 15-03078-rld against World Fuel Services, Inc. |
| 6/1/2015 | Debtor filed Motion to Determine Value of DeHavilland DH4-M1 |
| 6/1/2015 | Debtor filed Motion to Expedite Hearing on Motion to Determine Value of DeHavilland DH4-M1 |
| 6/12/2015 | Stipulated Order entered by the Court regarding Motion for Relief from Stay filed by Umpqua Bank |
| 6/15/2015 | Court entered the Order Approving (1) Proposed Global Settlement; and (2) Sale of Debtor's Real and Personal Property Free and Clear of Liens. [Docket No. 118][1] |
| 6/19/2015 | Court entered the Order establishing the value of the Debtor's DeHavilland DH4-M1 at $525,000. |
| 6/22/2015 | Debtor closed the sale of substantially all of its assets. |
| 9/2/2015 | Court entered the Stipulated Order Establishing Uniform Procedures for Attorney Timekeeping, Billing and Budgeting. |
| 10/30/2015 | Entry of Order Designating Case for Accelerated Treatment |

## E. Projected Recovery of Avoidable Transfers

The Debtor reserves all rights to pursue preference, fraudulent conveyance, or other avoidance actions, but does not currently believe that any such claims exist. The Debtor does not intend to pursue any avoidance claims.

## F. Claims Objections

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. The procedures for resolving disputed claims are set forth in Article V of the Plan.

---

[1] One of the Class 7 Creditors, Alfred T. Giuliano, asserts that he is not bound by the Global Settlement that was the subject of the Order entered on June 15, 2015. That issue is the subject of additional litigation currently pending in the Bankruptcy Case.

### G. Current and Historical Financial Conditions

The Debtor's most recent financial statements issued before bankruptcy, each of which was filed with the Court, are set forth in <u>Exhibit B</u>.

The most recent post-petition operating report filed since the commencement of the Debtor's bankruptcy case is set forth in <u>Exhibit C</u>.

### III. SUMMARY OF THE PLAN OF LIQUIDATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

#### A. What is the Purpose of the Plan of Liquidation?

As required by the United States Bankruptcy Code (the "Code"), the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

#### B. Unclassified Claims

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan Proponent has not placed the following claims in any class:

##### 1. Administrative Expenses

Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under § 507(a)(2) of the Code. Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition and providing certain other conditions are met. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtor's estimated administrative expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Post-Petition Expenses Arising in the Ordinary Course of Business | $0.00 | N/A |
| The Value of Goods Received in the Ordinary Course of Business Within 20 Days Before the Petition Date | N/A | N/A |
| Professional Fees, as approved by the Court. | $155,000 | Paid in full by the Effective Date. |
| Clerk's Office Fees | N/A | Paid in full on the effective date of the Plan |
| Other administrative expenses | N/A | N/A |
| Office of the U.S. Trustee | $6,500 | Paid in full on the effective date of the Plan |

| Type | Estimated Amount Owed | Proposed Treatment |
|------|----------------------|--------------------|
| Fees | | |
| TOTAL | $161,500 | |

       *2.  Priority Tax Claims*

      Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

**C.  Classes of Claims and Equity Interests**

      The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

       *1.  Classes of Secured Claims*

      Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.

      The following chart lists all classes containing Debtor's secured prepetition claims and their proposed treatment under the Plan:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 1 | Secured Claim of World Fuel Services, Inc. | Impaired | The claim of World Fuel Services, Inc. ("World Fuel") is secured by the Debtor's Douglas A26 Invader, and by $525,000 of cash proceeds held by the Debtor. The Debtor shall surrenders title and possession of the A26 Invader to World Fuel on the Effective Date. World Fuel's lien on the cash proceeds will be avoided and released pursuant to an agreement of the parties, and the remainder of World Fuel's claim shall be paid as a Class 5 unsecured claim. |
| 2 | Disputed Secured Claim of Yamhill County Tax Collector | Impaired | Upon closing of the sale of the Debtor's real and personal property, the Yamhill County Tax Collector was paid $481,623.84 for Acct # 523942, and $18,400.65 for Acct # P13977. These two accounts were for taxes assessed against real and personal property in which the Debtor had an interest, and both accounts were paid in full after the above-described payments were made. The remainder of Yamhill County Tax Collector's claim is for taxes assessed against real and personal property in which the estate has no equity or interest, and the Debtor has filed an objection to Yamhill County Tax Collector's claim [Proof of Claim No. 02] as a result. . Class 2 will receive no distributions from the Plan, and nothing in this Plan shall prejudice the creditor's asserted liens in the property described in its Proof of Claim. |

## 2. Classes of Priority Unsecured Claims

Certain priority claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim. However, a class of holders of such claims may vote to accept different treatment. The Debtor does not have any claims under §§ 507(a)(1), (4), (5), (6), and (a)(7) of the Code.

## 3. Classes of General Unsecured Claims

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of Classes 3 through 7, which contain general unsecured claims against the Debtor:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 3 | General Unsecured Claims Not Separately Classified | Impaired | Allowed Class 3 unsecured claims shall be paid their pro-rata share of $20,000, with no interest, on the later of: 1) the Effective Date; or 2) the date on which an order is entered allowing the holder's claim. The amount paid to Class 3 claims is approximately 28% of the allowed claims. |
| 4 | Umpqua Bank | Impaired | Umpqua Bank asserted a secured claim of $42,009,293.86 against the Debtor in the bankruptcy [Proof of Claim No. 6]. As part of an overall settlement approved pursuant to the Order Approving (1) Proposed Global Settlement; and (2) Sale of Debtor's Real and Personal Property Free and Clear of Liens entered on June 15, 2015 [Docket No. 118], Umpqua Bank agreed to accept $21 million as treatment for its allowed claim, with $20.5 million paid at the time the settlement was approved (the "Fixed Umpqua Payment") and $500,000 paid when the lien asserted by World Fuel as to the DeHavilland DH4-M1 was avoided (the "Contingent Umpqua Payment"). The Fixed Umpqua Payment was made and the Contingent Umpqua Payment is owing as the World Fuel lien is avoided. To facilitate the Debtor's settlement with World Fuel, Umpqua has agreed to reduce the required Contingent Umpqua Payment from $500,000 down to $469,835 and to be paid this amount through a confirmed plan. Therefore, the Class 4 unsecured claim shall be paid $469,835.00 on the Effective Date. This amount is approximately 2.2% of the Class 4 claim. The holder of the Class 4 claim has agreed to this treatment, even though other unsecured creditors will be paid a higher percentage of their claims. |
| 5 | World Fuel Services. Inc. | Impaired | The Class 5 unsecured claim shall be paid $400,000 on the Effective Date. This amount is approximately 3.66% of the Class 5 claim. The holder of the Class 5 claim has agreed to this treatment, even though other unsecured creditors will be paid a higher percentage of their claims. |
| 6 | Evergreen Helicopters, Inc. | Impaired | The Class 6 unsecured claim shall not receive any |

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
|         |             |            | distribution under the Plan unless the Class 3, 4 and 5 claims are paid in full. |
| 7       | Affiliated or Insider Creditors | Impaired | Class 7 unsecured claims shall not receive any distributions under the Plan unless the Class 3, 4, 5 and 6 claims are paid in full. |

### 4. Class of Equity Interest Holders

Equity interest holders are parties who hold an ownership interest (i.e., equity interest) in the Debtor. In a corporation, the equity interest holders are the shareholders. The following chart sets forth the Plan's proposed treatment of the class of equity interest holders:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 8       | Equity interest holders | Unimpaired | Equity Holders shall not retain their membership interest in the Debtor. |

### D. Means of Implementing the Plan

#### 1. Source of Payments

On June 19, 2015, the Court entered an Order Approving (1) Proposed Global Settlement; and (2) Sale of Debtor's Real and Personal Property Free & Clear of Liens [Docket No. 118]. Shortly thereafter, the Debtor sold all of its real and personal property for $22,000,000. From the sale proceeds, the Debtor paid closing costs, real and personal property taxes, Umpqua Bank's secured claim, and the US Trustee's quarterly fees. In addition to the sale proceeds, the Debtor has collected all receivables, and has $1,037,769.56 of total cash available to make the distributions required under this Plan. The cash available constitutes the entirety of the Debtor's remaining assets.

In addition to the Debtor's cash on hand, the Estate of Delford M. Smith will make a cash contribution to the Debtor, in the amount of $20,165.00, to provide the additional funds needed to make distributions required under this Plan.

#### 2. Post-confirmation Management

There will not be significant post-confirmation management of the Debtor. The Plan provides that the distributions to Creditors be made on the Effective Date of the Plan. After distributions are made, the Debtor will be dissolved.

### E. Risk Factors

The Plan is based on the use of cash already in the Debtor's possession. The Plan also depends on Court approval of the proposed settlement of the pending adversary proceeding against World Fuel Services, Inc. Approval of the settlement will enable the Debtor to receive $20,165 from the Estate of Delford M. Smith, which it will use to pay the Class 3 unsecured creditors. While the Debtor believes that the settlement is in the best interest of the estate, there is a risk the settlement will not be approved, and the contribution from the Smith estate will not be received for use to pay unsecured creditors. In that event, the Debtor would litigate the adversary proceeding, and would incur significant costs and administrative fees.

### F. Executory Contracts and Unexpired Leases

As part of the Global Settlement and Sale of the Debtor's assets, all executory contracts were either terminated and released, or were assigned to the buyer. As a result, the Debtor does not have any executory contracts to assume or reject.

### G. Tax Consequences of Plan

The following discussion summarizes in general terms certain federal income tax consequences of the implementation of the Plan based upon existing provisions of the Internal Revenue Code of 1986, as amended (the "Internal Revenue Code"), court decisions, and current administrative rulings and practice. This summary does not address the federal income tax consequences of the Plan to holders of priority or secured claims, nor does it address any state, local or foreign tax matters or the federal income tax consequences to certain types of creditors (including financial institutions, life insurance companies, tax exempt organizations and foreign taxpayers) to which special rules may apply. No rulings or opinions have been or will be requested from the Internal Revenue Service with respect to any tax aspects of the Plan.

***The Debtor is not making any representations regarding the particular tax consequences of confirmation and consummation of the Plan as to creditors or equity interest holders, nor is the Debtor or its professionals rendering any form of legal opinion or tax advice as to such tax consequences. The tax laws applicable to companies in bankruptcy are complex and are subject to significant uncertainties. Each creditor and equity interest holder is urged to consult his, her or its own tax advisor as to the consequences of the Plan under federal and applicable state, local and foreign tax laws.***

#### 3. Tax Consequences to the Debtor

The Debtor is a corporation that is taxed on a consolidated basis with its parent company, the equity holders. As a result, taxable gains and losses will be "passed through" to the Debtor's equity interest holders. Consummation of the Plan is not expected to result in any direct income tax consequences for the Debtor.

#### 4. Tax Consequences to Holders of General Unsecured Claims

Under the Plan, holders of Allowed Unsecured Claims will receive one or more Cash distributions. In connection with the implementation of the Plan, each holder of an Allowed Unsecured Claim generally will recognize gain or loss for federal income tax purposes. The timing and amount of that gain or loss will depend upon a number of factors, including whether the holder reports income as an accrual basis taxpayer or as a cash basis taxpayer, whether the holder will receive multiple distributions pursuant to the Plan and whether the Debtor's obligation to make payments will be treated as a new debt obligation for federal income purposes. It is possible that any loss, or a portion of any gain, realized by a creditor may have to be deferred until all distributions to the creditor are received.

In addition, the character of any gain or loss recognized by a creditor as long-term or short-term capital gain or loss or as ordinary income or loss will be determined by a number of factors, including the tax status of the creditor, whether the obligation from which the creditor's claim arose constitutes a capital asset in the hands of the creditor, whether the obligation from which the claim arose has been held for more than one year, the allocation of any distributions received between principal and unpaid accrued interest, whether and to what extent the creditor has previously claimed a bad debt deduction, and the extent (if any) to which interest may be imputed where multiple distributions are received.

#### 5. Tax Consequences to Equity Interest Holders

Upon the sale or other taxable disposition of all or part of the Debtor's assets, Equity Interest Holders

may be required to recognize be required to recognize gain in excess of the holder's basis, or may be able to recognize losses for amount less than the holder's basis. As a result, Equity Interest Holders may be required to pay federal income taxes on their allocated shares of the income generated by the Debtor, regardless of whether the Debtor distributes any cash to them.

## IV.     CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requirements that: the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are not the only requirements listed in § 1129, and they are not the only requirements for confirmation.

### A. Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met. Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that all classes of claims and interests are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan.

### 1. What Is an Allowed Claim or an Allowed Equity Interest?

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

The deadline for filing a proof of claim in this case was **April 13, 2015.**

### 2. What Is an Impaired Claim or Impaired Equity Interest?

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

### 3. Who is **Not** Entitled to Vote

The holders of the following types of claims and equity interests are *not* entitled to vote:

- holders of claims and equity interests that have been disallowed by an order of the Court;
- holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests"

(as discussed above), unless they have been "allowed" for voting purposes.

- holders of claims or equity interests in unimpaired classes;
- holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code;
- holders of claims or equity interests in classes that do not receive or retain any value under the Plan;
- administrative expenses.

Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan and to the Adequacy of the Disclosure Statement.

### 4. Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

### B. Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in Section B.2.

### 1. Votes Necessary for a Class to Accept the Plan

A class of Claims will have accepted the Plan if the Plan is accepted by Creditors holding at least two-thirds (2/3) in total dollar amount and more than one-half (1/2) in number of the Allowed Claims of such class voting on the Plan. A Class of Interests will have accepted the Plan if voting members of that class holding at least two-thirds in amount of the allowed interests voting, have voted for the Plan. All of the foregoing percentage requirements are determined entirely from those Creditors or interests that actually vote. If a Class of Claims is not impaired, it is deemed to accept the Plan.

### 2. Treatment of Non-accepting Classes

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the non-accepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds non-accepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind non-accepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

**You should consult your own attorney if a "cramdown" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.**

### C. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached hereto as <u>Exhibit D</u>.

### D. Feasibility

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or

the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

    *1. Ability to Initially Fund Plan*

  Upon approval of the settlement with World Fuel Services, Inc., the Plan Proponent believes that the Debtor will have enough cash to pay all claims and expenses that are entitled to be paid on the Effective Date.

    *2. Ability to Make Future Plan Payments and Operate Without Further Reorganization*

  The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments. This Plan is a liquidating Plan, and the Debtor has already sold all of its assets. The Debtor will make Plan payments in one lump sum within three (3) business days of the Effective Date.

### V.  EFFECT OF CONFIRMATION OF PLAN

#### A. NO DISCHARGE OF DEBTOR.

  <u>No Discharge.</u>  In accordance with § 1141(d)(3)(a) of the Code, the Debtor will not receive any discharge of debt in this bankruptcy case.

#### B. Modification of Plan

  The Plan Proponent may modify the Plan at any time before confirmation of the Plan.  However, the Court may require a new disclosure statement and/or re-voting on the Plan.

#### C. Final Decree

  Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

     /s/ Lisa Anderson
     as President of Evergreen Vintage Aircraft, Inc.


     /s/ Nicholas J. Henderson
     Nicholas J. Henderson
     Attorney for Debtor

Exhibits:
A – Debtor's Plan of Liquidation dated December 4, 2015
B – Debtor's Pre-petition Financial Statements
C – Debtor's October, 2015 Monthly Operating Report
D – Liquidation Analysis

**EXHIBIT A**
**PLAN OF LIQUIDATION DATED DECEMBER 4, 2015**

Nicholas J. Henderson, OSB#074027
nhenderson@portlaw.com
Motschenbacher & Blattner, LLP
117 SW Taylor St., Suite 200
Portland, OR 97204
Telephone: (503) 417-0508
Facsimile: (503) 417-0528

Attorneys for Debtor Evergreen Vintage Aircraft, Inc.

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF OREGON

| | |
|---|---|
| In re: | Case No. 14-36770-rld11 |
| EVERGREEN VINTAGE AIRCRAFT, INC. | DEBTOR'S PLAN OF LIQUIDATION |
| Debtor. | Dated December 4, 2015 |

## ARTICLE I
## SUMMARY

This Plan of Liquidation (the "Plan") under Chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of Evergreen Vintage Aircraft, Inc. (the "Debtor") from the sale of substantially all of the Debtor's assets.

This Plan provides for **2** classes of secured claims; **5** classes of unsecured claims; and **1** class of equity security holders. Unsecured creditors will receive distributions in differing amounts, based on the agreement of certain creditors, Classes 4 and 5, who have agreed to accept a lower distribution than other unsecured creditors. Unsecured creditors that are neither insiders or affiliates of the Debtor, and that have not agreed to a reduced distribution, will receive a pro-rata share of $20,000, which the Plan Proponent believes will pay approximately **28** cents on the dollar for creditors receiving payment from such funds. Equity security holders will not retain their interests, and the Debtor will be dissolved after performance of this Plan. This Plan also provides for the payment of administrative claims. All distributions will be paid from proceeds remaining after the sale of substantially all of the Debtor's assets, which has already occured.

All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. Your rights may be affected. You should read these papers carefully and

**EXHIBIT A - Page 1 of 8**
Case 14-36770-rld11    Doc 165    Filed 12/04/15

discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

2.01    Class 1.  Disputed secured claim of World Fuel Services, Inc.  Class 1 consists of the secured claim asserted by World Fuel Services, Inc.

2.02    Class 2.  Disputed secured claim of Yamhill County Tax Collector.  Class 2 consists of the secured claim asserted by Yamhill County Tax Collector, in real estate and improvements previously owned by the Debtor.

2.03    Class 3.  General Unsecured Creditors Not Separately Classified.  Class 3 consists of those creditors holding General Unsecured Claims not separately classified by this Plan.

2.04    Class 4.  Umpqua Bank Unsecured Claim.  Class 4 consists of the general unsecured claim held by Umpqua Bank.

2.05    Class 5.  World Fuel Unsecured Claim.  Class 5 consists of the general unsecured claim of World Fuel Services, Inc.

2.06    Class 6.  Evergreen Helicopters, Inc.  Class 6 consists of the disputed, contingent and unliquidated claim of Evergreen Helicopters, Inc.

2.07    Class 7.  Insider and affiliate claims.  Class 7 consists of claims held by insiders and affiliates of the Debtor.

2.08    Class 8.  Equity interests of the Debtor.

## ARTICLE III
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,
## U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

3.01    Unclassified Claims.  Under section §1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

3.02    Administrative Expense Claims.  Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the effective date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

3.03    Priority Tax Claims.  Each holder of a priority tax claim will be paid in full on the Effective Date of the Plan.

3.04    United States Trustee Fees.  All U.S. Trustee fees required to be paid by 28 U.S.C. §1930 will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.  Any U.S. Trustee Fees owed on or before the Effective Date will be paid on the Effective Date.

Page 2 of 8 – PLAN OF LIQUIDATION

# ARTICLE IV
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

Claims and interests shall be treated as follows under this Plan:

Class 1 –World Fuel Services, Inc.'s Disputed Secured Claim.

Class 1 is impaired.  Class 1 consists of the disputed secured claims of World Fuel Services, Inc. against the Debtor's Douglas A-26 Invader, and against $525,000 of the cash proceeds from the sale of a DeHavilland DHM1.  Pursuant to the settlement between the parties, World Fuel's liens will be partially avoided, and World Fuel will receive distributions as set forth in this Plan.  Regarding Class 1, within three (3) business days following the later of either 1) the Effective Date of this Plan; or 2) the date on which the Court approves the Debtor's proposed settlement with World Fuel Services, Inc., the Debtor shall transfer possession and title of the Douglas A-26 Invader to World Fuel Services, Inc.  The remainder of World Fuel Service, Inc.'s claim shall be treated as a Class 5 unsecured claim.

Class 2 –Yamhill County Tax Collector Unsecured Claims.

Class 2 is impaired.  Class 2 consists of the disputed secured claims of Yamhill County Tax Collector.  Yamhill County Tax Collector was partially paid from the sale of the Debtor's assets, in amounts sufficient to satisfy tax claims against property in which the Debtor owned prior to the sale.  The remainder of Yamhill County Tax Collector's claim is for ad valorem taxes on real and personal property in which the Debtor has no equity or interest.  The tax claims are *in rem* against property in which the Debtor no longer claims an interest, and not *in personam* against the Debtor.  No payment shall be made by the Debtor to Yamhill County Tax Collector.  Nothing in this Plan shall prejudice the rights of Yamhill County Tax Collector regarding the liens asserted against the properties referenced in the creditor's Proof of Claim.

Class 3 – General Unsecured Claims Not Otherwise Separately Classified

Class 3 is impaired.  Each holder of a Class 3 Unsecured Claim will be paid its pro-rata share of $20,000, without interest, within three (3) business days following the later of either 1) the Effective Date of this Plan; or 2) the date on which such claim is allowed by a final non-appealable order.  It is anticipated that Class 3 claims will receive approximately 28.44% of their claims.

Class 4 –Unsecured Claim of Umpqua Bank

Class 4 is impaired. Class 4 consists of the unsecured claim of Umpqua Bank.  Specifically, Class 4 includes Umpqua Bank's $500,000 "Contingent Payment" claim, as defined in the Settlement Term Sheet attached to the Notice of Intent and Motion to Settle and Compromise Pursuant to FRBP 9019 and Notice of Hearing filed on April 23, 2015 [Docket No. 71], which was approved pursuant to the Order Approving (1) Proposed Global Settlement; and (2) Sale of Debtor's Real and Personal Property Free and Clear of Liens entered on June 15, 2015 [Docket No. 118].  The Class 4 claim also includes the remainder of Umpqua Bank's General Unsecured Claim.  The Class 3 creditor shall receive cash payment of $469,835, without interest, within three (3) business days of the Effective Date.  This distribution amounts to approximately 2.2% of the Class 4 claim.  The holder of the Class 4 claim has consented to this disparate treatment.

Page 3 of 8 – PLAN OF LIQUIDATION

Class 5 – <u>Unsecured Claim of World Fuel Services, Inc.</u>

Class 5 is impaired. Class 5 consists of the unsecured claim of World Fuel Services, Inc.  The Class 5 creditor shall receive cash payment of $400,000, without interest, within three (3) business days of the Effective Date.   This distribution amounts to approximately 3.66% of the Class 5 claim.  The holder of the Class 5 claim has consented to this disparate treatment.

Class 6 – <u>Disputed Claim of Evergreen Helicopters, Inc.</u>

Class 6 is impaired. Class 6 consists of the disputed, contingent and unliquidated claim for contribution filed by Evergreen Helicopters, Inc.  No payment will be made to the Class 6 claim unless the holders of claims in Classes 3, 4 and 5 are paid in full.

Class 7 – <u>Insider and Affiliate Claims</u>

Class 7 is impaired. Class 6 consists of the unsecured claims held by insiders and affiliates of the Debtor.  Specifically, Class 7 includes the unsecured claims by any of the following:

- Alfred T. Giuliano, Chapter 7 Trustee for:
  - Evergreen Aviation Ground Logistics Enterprise, Inc.;
  - Evergreen Defense & Security Services, Inc.;
  - Evergreen International Airlines, Inc.;
  - Evergreen International Aviation, Inc.;
  - Evergreen Systems Logistics, Inc.;
  - Evergreen Trade, Inc.; and
  - Supertanker Services, Inc.
- The Estate of Delford M. Smith;
- Evergreen Holdings, Inc.;
- Michael King Smith Foundation;
- Ventures Acquisition Company, LLC; and
- Ventures Holdings, Inc.

No payment is to be made to the Class 7 claims unless the holders of claims in Classes 3through 6 are paid in full.

Class 8 – <u>Equity Interests</u>

Equity Holders shall not retain or receive any property from the Debtor.

**ARTICLE V**
**ALLOWANCE AND DISALLOWANCE OF CLAIMS**

5.01    Disputed Claim.  A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

Page 4 of 8 – PLAN OF LIQUIDATION

5.02    Delay of Distribution on a Disputed Claim.  No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.03    Settlement of Disputed Claims.  The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.


# ARTICLE VI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

As part of the Global Settlement, defined below, and the subsequent sale of the Debtor's assets, all executory contracts were either terminated and released, or were assigned to the buyer.  As a result, the Debtor does not have any executory contracts to assume or reject.

# ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

7.01    <u>Payments from Available Cash and Contribution from Delford M. Smith Estate</u>.

On June 19, 2015, the Court entered an Order Approving (1) Proposed Global Settlement; and (2) Sale of Debtor's Real and Personal Property Free & Clear of Liens [Docket No. 118] (the "Global Settlement").  Shortly thereafter, the Debtor sold all of its real and personal property for $22,000,000.  From the sale proceeds, the Debtor paid closing costs, real and personal property taxes, Umpqua Bank's secured claim, and the US Trustee's quarterly fees.  In addition to the sale proceeds, the Debtor has collected all receivables, and has $1,037,769.56 of total cash available to make the distributions required under this Plan.  The cash available constitutes the entirety of the Debtor's remaining assets.

In addition to the Debtor's cash on hand, the Estate of Delford M. Smith will make a cash contribution to the Debtor, in the amount of $20,165.00, to provide the additional funds needed to make distributions required under this Plan.

7.02    <u>Retention of Avoidance Claims</u>. Avoidance Claims, if any, are retained. Any holder of a Claim against the Debtor shall automatically have such Claim disallowed without further action by the Debtor or order of this Court if the holder of a Claim fails to repay the Debtor any sum that may be recoverable by the Debtor under Bankruptcy Code §§ 522(f), 522(h), 542, 543, 544, 545, 547, 548, 549, 550 or 724(a) within ten days of a final judgment in the Debtor's favor against such Claim holder, unless such Creditor has posted a supersedeas bond for the entire amount of the Debtor's judgment. The Debtor does not believe it has any avoidance claims, and does not intend to pursue avoidance claims.

7.03    <u>Retention of Third-Party Claims</u>.  Except as otherwise provided in this Plan, the Debtor retains all Third-Party Claims.

7.04    <u>No Interest</u>.  Except as expressly stated in the Plan or otherwise allowed by the Bankruptcy Court, no interest, penalty or late charge arising after the Petition Date shall be allowed on any Claim, and the Debtor shall be entitled to offset the distribution to any Creditor who has received payment for postpetition, interest, penalties or late charges not approved by the Court.

Page 5 of 8 – PLAN OF LIQUIDATION

7.05    Time Bar to Cashing Checks.  The Debtor may (but shall not be obligated to) stop payment on any check issued by it for an allowed claim if such check is not presented for payment within 60 days after the date of issuance thereof. Any request for reissuance of any check shall be made to the Debtor in accordance with this Plan, by the holder of the allowed claim to whom such check originally was issued, prior to the expiration of the 180-day period following the Effective Date. After such date, the holder of any such Claim who has failed to make a timely request for reissuance of such a voided check shall not be entitled to any other or further distribution under this Plan on account of such voided check or such claim, and any funds remaining as a result will be distributed pro-rata to Class 3 claim holders.

## ARTICLE VIII
## SECTION 1129(b) REQUEST

If thePlan meets the requirements of all provisions of 11 U.S.C. § 1129(a), except Paragraph 8 thereof, Debtor hereby requests confirmation of the Plan pursuant to 11 U.S.C. § 1129(b).

## ARTICLE IX
## GENERAL PROVISIONS

9.01    Definitions and Rules of Construction.  The definitions and rules of construction set forth in §§ 101 and 102 of the United States Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan.

9.02    Effective Date of Plan.  The effective date of this Plan is the first business day following entry of an order confirming the Plan.  If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay of the confirmation order expires or is otherwise terminated.

9.03    Severability.  If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

9.04    Binding Effect.  The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

9.05    Waiver.  After entry of the Confirmation Order and except as otherwise specifically set forth in the Plan, any term of the Plan may be waived by the party benefitted by the term, but only in a writing signed by the waiving party, which will be effective without notice or Court approval.

9.06    Captions.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

9.07    Controlling Effect.  Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Oregon govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

# ARTICLE IX – DEFAULT

Except as otherwise specifically provided in the Plan, in the event Debtor shall default in the performance of any of its obligations under the Plan, then a claimant may pursue such remedies as are available at law or in equity. An event of default occurring with respect to one Claim shall not be an event of default with respect to any other Claim. Nothing contained in the Plan shall limit the right of any party to reopen this case or to convert this case to a liquidation case under Chapter 7 of the Bankruptcy Code if cause for such relief exists.

Debtor shall be entitled to written notice of any claimed default under the Plan, and shall have twenty (20) days opportunity to cure. If such claimed default is cured within the twenty (20) days cure period, then such Creditor shall not be entitled to enf orce any remedies which would otherwise be available on account of such default. If Debtor fails to cure within the twenty (20) days cure period, then such Creditor may seek such remedies as are granted by law to enforce its rights arising under and pursuant to the Plan, including seeking an order to compel such performance. The default and cure provisions contained in this Plan shall supercede any provisions concerning default and cure contained in any other agreement between Debtor and any Creditor affected by this Plan.

Notice of default shall be effective when served simultaneously via email at the email addresses shown below and mailed to both the Debtor and to the Debtor's attorney, if any, postage prepaid, at the following addresses:

> Debtor: Evergreen Vintage Aircraft, Inc.
> Attn: Lisa Anderson, President
> 1271 NE Hwy 99W, PMB 502
> McMinnville, OR 97128
>
> Debtor's Attorney: Nicholas J. Henderson
> Motschenbacher & Blattner, LLP
> 117 SW Taylor Street, Suite 300
> Portland, OR 97204
> Email: nhenderson@portlaw.com

# ARTICLE X. -- RETENTION OF JURISDICTION

Notwithstanding the entry of the order confirming the Plan, the Court shall retain jurisdiction of this Chapter 11 case pursuant to and for the purposes set forth in 11 U.S.C. § 1127(b) and (a) to classify the Claim of any Creditor, reexamine Claims which have been allowed for voting purposes and determine any objection that may be filed to Claims; (b) to determine requests for payment of Claims entitled to priority under § 507(a)(2) of the Code, including compensation and reimbursement of expenses in favor of professionals employed at the expense of the estate; (c) to avoid transfers or obligations and to subordinate Claims under Chapter 5 of the Bankruptcy Code; (d) to approve the assumption, assignment or rejection of executory contracts and unexpired leases pursuant to 11 U.S.C. §§ 365 and 1123; (e) to resolve all controversies and disputes regarding the interpretation of the Plan; (f) to implement the provisions of the Plan and enter orders in aid of confirmation; (g) to adjudicate any and all adversary proceedings and contested matters pending or hereafter commenced in this Chapter 11 case; (h) to enter a final decree closing this Chapter 11 case; for such other matters as may be set forth in

the Confirmation Order; and (i) to determine the nature and extent of Debtor's ownership, or rights in property held by the Debtor as of the Petition Date, including but not limited to actions to quiet title.

## ARTICLE XI
## NO DISCHARGE OF DEBTOR

10.01   <u>No Discharge</u>.  In accordance with § 1141(d)(3)(A) of the Code, the Debtor will not receive any discharge of debt in this bankruptcy case.

Respectfully submitted,

EVERGREEN VINTAGE AIRCRAFT, INC.

By:   /s/ Lisa Anderson
Lisa Anderson,
as President of Evergreen Vintage Aircraft, Inc.
The Plan Proponent

By:   /s/ Nicholas J. Henderson
Nicholas J. Henderson OR: 074027
Attorney for the Plan Proponent

Page 8 of 8 – PLAN OF LIQUIDATION

**EXHIBIT B**
**DEBTOR'S PREPETITION FINANCIAL STATEMENTS**

**2014 Evergreen Vintage Aircraft**
**Balance Sheet**
**As of December 10, 2014**

|  | Dec 10, 14 |
|---|---|
| **ASSETS** | |
|   **Current Assets** | |
|     **Accounts Receivable** | |
|       Accounts Receivable | 50,000.00 |
|     **Total Accounts Receivable** | 50,000.00 |
|     **Other Current Assets** | |
|       Income Tax Receivable | 20,867.00 |
|       Deferred income tax asset | 2,853,827.00 |
|     **Total Other Current Assets** | 2,874,694.00 |
|   **Total Current Assets** | 2,924,694.00 |
|   **Fixed Assets** | |
|     Machinery & Equipment | 737,261.27 |
|     Buildings & Improvements | 44,792,340.43 |
|     Land and Improvements | 432,921.50 |
|     Construction in Progress | 8,890,357.62 |
|     Vintage Aircraft | 10,771,167.30 |
|     Accumulated Depreciation | -15,018,055.59 |
|   **Total Fixed Assets** | 50,605,992.53 |
|   **Other Assets** | |
|     Notes Rec. & Accrued Interest | -2,049,358.67 |
|     Capitalization loan acq. costs | 79,344.95 |
|     Deposits | 27,500.00 |
|   **Total Other Assets** | -1,942,513.72 |
| **TOTAL ASSETS** | 51,588,172.81 |
| **LIABILITIES & EQUITY** | |
|   **Liabilities** | |
|     **Current Liabilities** | |
|       **Accounts Payable** | |
|         Accounts Payable | 213,511.46 |
|       **Total Accounts Payable** | 213,511.46 |
|       **Other Current Liabilities** | |
|         NP Ventures Holdings, Inc. | 5,000.00 |
|         Imax | 50,000.00 |
|         Accrued Liab Affiliate | 10,229,808.33 |
|         Note Payable Affiliate | 64,703,232.55 |
|         Accrued Liabilities | 649,437.75 |
|         Accrued Interest | -12,014.52 |
|       **Total Other Current Liabilities** | 75,625,464.11 |
|     **Total Current Liabilities** | 75,838,975.57 |
|     **Long Term Liabilities** | |
|       Deferred Income Taxes Liability | -7,179,763.33 |
|       Holdings Vintage Intercompany | 54,929,852.48 |
|       LTD Net of Current Portion | 12,037,716.92 |
|     **Total Long Term Liabilities** | 59,787,806.07 |
|   **Total Liabilities** | 135,626,781.64 |
|   **Equity** | |
|     Paid in capital | 4,934,557.82 |
|     Retained Earnings | -88,997,009.60 |
|     Net Income | 23,842.95 |
|   **Total Equity** | -84,038,608.83 |
| **TOTAL LIABILITIES & EQUITY** | 51,588,172.81 |

**EXHIBIT C**
**OCTOBER, 2015 MONTHLY OPERATING REPORT**

# MONTHLY OPERATING REPORT FOR
## CORPORATE OR PARTNERSHIP DEBTOR
### (Including LLCs and LLPs)

Case No.  14-36770-rld11

Debtor  Evergreen Vintage Aircraft, Inc.

Report Month/Year  October 2015

**Instructions**: The debtor's monthly financial report shall include this cover sheet signed by the debtor and all UST forms and supporting documents. Exceptions, if allowed, are noted in the checklist below. Failure to comply with the reporting requirements of Local Bankruptcy Rule 2015-1(b) and 2015-2, or the U.S. Trustee's reporting requirements, is cause for conversion or dismissal of the case.

| | The debtor submits the following with this monthly financial report: | Completed | Not Applicable |
|---|---|---|---|
| UST-11 | **Comparative Income Statement** or debtor's income statement (must include all line items specified on UST-11). | xxx | |
| UST-12 | **Comparative Balance Sheet** or debtor's balance sheet (must include all items specified on UST-12. The debtor's balance sheet, if used, shall include a breakdown of pre- and post-petition liabilities. The breakdown may be provided as a separate attachment to the debtor's balance sheet. | xxx | |
| UST-13 | **Comparative Cash Flow Statement** or debtor's cash flow statement (must include all line items specified on UST-13). Complete this statement if the debtor is reporting based on the accrual basis of accounting. This is the required method, unless other arrangements have been made with the U.S. Trustee. | xxx | |
| UST-14 | **Summary of Disbursements** | xxx | |
| UST-14A | **Statement of Cash Receipts and Disbursements** Complete one or more to include all bank accounts or other sources of debtor funds. Attach copies of monthly bank statements and all supporting documents described in the instructions. | xxx | |
| UST-14B | **Additional Disbursement Information** | xxx | |
| UST-15 | **Statement of Aged Receivables** Provide a detailed accounting of aged receivables on, or as an attachment to, UST-15. | xxx | |
| UST-16 | **Statement of Aged Post-Petition Payables** Provide a detailed accounting of aged post-petition payables on, or as an attachment to, UST-16. | xxx | |
| UST-17 | **Statement of Operations** When applicable, UST-17 shall include copies of supporting documents such as an escrow statement for the sale of real property, an auctioneer's report for property sold at auction, or a certificate of insurance or copy of debtor's bond for any change in insurance or bond coverage. | xxx | |

**DEBTOR'S CERTIFICATION**

I certify under penalty of perjury that (1) I have personally prepared this financial report or directly supervised its preparation, and (2) the information contained in this monthly financial report is complete, true, an accurate to the best of my knowledge, information, and belief.

BY: _____

TITLE:  President

DAY  December 3, 2015

The debtor or trustee, if appointed, must sign the monthly financial report. Only an authorized officer may sign a financial report for a corporate debtor and only a general partner has authority to sign a financial report for a partnership debtor. Debtor's counsel may not sign a financial report for the debtor.

EXHIBIT C - Page 1 of 13
Case 14-36770-rld11    Doc 165    Filed 12/04/15

Case Number: 14-36770-rld11
Report Mo/Yr: October 2015

**Debtor:** Evergreen Vintage Aircraft, Inc.

## UST-11, COMPARATIVE INCOME STATEMENT

INSTRUCTIONS: The initial report should include only business activity commencing from the petition date through the end of the month.

| For the Month of: | MO/YR 8/2015 | MO/YR 9/2015 | MO/YR 10/2015 | Cumulative To Date |
|---|---|---|---|---|
| Revenue | | | | 85,000 |
| Less: Returns and Allowances | | | | - |
| NET REVENUE | - | - | - | 85,000 |
| | | | | |
| Cost of Goods sold: | | | | |
| Beginning Inventory | | | | - |
| Add: Purchases | | | | - |
| Less: Ending Inventory | | | | - |
| Cost of Goods Sold | - | - | - | - |
| | | | | |
| Additional Costs of Good Sold: | | | | |
| Direct Labor | | | | - |
| Freight In | | | | - |
| TOTAL COST OF GOOD SOLD | - | - | - | - |
| | | | | |
| Other Operating Expenses: | | | | |
| Officers' Salaries (Gross) | | | | - |
| Other Salaries (Gross) | | | | - |
| Depreciation and Amortization | | | | - |
| Employee Benefits | | | | - |
| Payroll Taxes (Employer's portion) | | | | - |
| Insurance | | | | - |
| Rent | | | | - |
| General and Administrative | - | 20 | | 802 |
| TOTAL OPERATING EXPENSES | - | 20 | - | 802 |
| NET OPERATING INCOME (LOSS) | - | (20) | - | 84,198 |
| | | | | |
| Add: Other Income | | | | - |
| | | | | |
| Less: Interest Expense | | | | - |
| | | | | |
| Less: Non-recurring items | | | | |
| Professional Fees | - | | | - |
| UST Fees | | (19,692) | (325) | (20,344) |
| Other (specify) | | | | - |
| TOTAL NON-RECURRING ITEMS | - | (19,692) | (325) | (20,344) |
| | | | | |
| GAIN (LOSS) ON DISPOSAL OF ASSETS | - | | | (88,991,346) |
| | | | | |
| NET INCOME (LOSS) BEFORE INCOME TAX | - | (19,712) | (325) | (88,927,492) |
| Income Taxes | | | | - |
| NET INCOME (LOSS) | - | (19,712) | (325) | (88,927,492) |

Monthly Operating Report -Corporate or Partnership Debtor
United States Trustee-Oregon

Page 2 of 13
(Revised 3/4/11)

EXHIBIT C - Page 2 of 13
Case 14-36770-rld11    Doc 165    Filed 12/04/15

Case Number: 14-36770-rld11
Report Mo/Yr: October 2015

Debtor: Evergreen Vintage Aircraft, Inc.

## UST-12, COMPARATIVE BALANCE SHEET

| ASSETS As of month ending: | MO/YR 8/2015 | MO/YR 9/2015 | MO/YR 10/2015 | PER SCHEDULES (i.e. Petition Date) |
|---|---|---|---|---|
| Current Assets | | | | |
| Cash-Restricted | 966,103 | 966,103 | 953,897 | - |
| Cash-Unrestricted | 83,892 | 83,872 | 83,872 | - |
| TOTAL CASH | 1,049,995 | 1,049,975 | 1,037,769 | - |
| | | | | |
| Accounts Receivable | - | - | - | |
| Less: Allowance for Doubtful Accounts | | | | |
| NET ACCOUNTS RECEIVABLE | - | - | - | - |
| | | | | |
| Notes Receivable | | | | |
| Insider Receivables | | | | |
| Inventory  (see note below) | | | | |
| Prepaid Expenses | | | | |
| Other (attach list) | | | | |
| TOTAL CURRENT ASSETS | 1,049,995 | 1,049,975 | 1,037,769 | - |
| Fixed Assets | | | | |
| Real Property/Buildings | | - | - | 69,653,278 |
| Equipment | | - | - | 41,312,007 |
| Accumulated Depreciation | | | | |
| NET FIXED ASSETS | - | - | - | 110,965,285 |
| | | | | |
| Other Assets (attach list) | | | | |
| TOTAL ASSETS | 1,049,995 | 1,049,975 | 1,037,769 | 110,965,285 |
| | | | | |
| **LIABILITIES** | | | | |
| Post-Petition Liabilities | | | | |
| Trade Accounts Payable | | 19,692 | | |
| Taxes Payable | | | | |
| Accrued Professional Fees | | | | |
| Notes Payable | | | | |
| Rents and Lease payables | | | | |
| Accrued Interest | | | | |
| Other (specify) | | | - | |
| TOTAL POST-PETITION LIABILITIES | - | 19,692 | - | |
| Pre-Petition Liabilities | | | | |
| Secured Debt | 30,115,285 | 30,115,285 | 30,115,285 | 51,115,309 |
| Priority Debt | | | | |
| Unsecured Debt | 131,985,292 | 131,985,292 | 131,985,292 | 131,985,292 |
| Other (attach list) | | | | |
| TOTAL PRE-PETITION LIABILITIES | 162,100,577 | 162,100,577 | 162,100,577 | 183,100,601 |
| | | | | |
| TOTAL LIABILITIES | 162,100,577 | 162,120,269 | 162,100,577 | 183,100,601 |

Method of inventory valuation (Cost, Lower of Cost or Market, FIFO, LIFO, Othe Costs

Monthly Operating Report -Corporate or Partnership Debtor

United States Trustee-Oregon

Page 3 of 13

(Revised 3/4/11)

**EXHIBIT C - Page 3 of 13**
Case 14-36770-rld11    Doc 165    Filed 12/04/15

Case Number: 14-36770-rld11
Report Mo/Yr: October 2015

Debtor: Evergreen Vintage Aircraft, Inc.

## UST-12, COMPARATIVE BALANCE SHEET

| 12/2014 EQUITY                      As of month ending: | MO/YR 8/2015 | MO/YR 9/2015 | MO/YR 10/2015 | PER SCHEDULES (i.e. Petition Date) |
|---|---|---|---|---|
| Owners' Equity (or Deficit) | | | | |
| | | | | |
| Prepetition Owners' Equity | (72,135,316) | (72,135,316) | (72,135,316) | (72,135,316) |
| Post-petition Cumulative Profit or (Loss) | (88,915,266) | (88,934,978) | (88,927,492) | |
| Direct Charges to Equity (Explain) | | | | |
| | | | | |
| TOTAL OWNERS' EQUITY (DEFICIT) | (161,050,582) | (161,070,294) | (161,062,808) | (72,135,316) |
| | | | | |
| | | | | |
| TOTAL LIABILITIES AND OWNERS' EQUITY(DEFICIT) | 1,049,995 | 1,049,975 | 1,037,769 | 110,965,285 |

FOOTNOTES TO BALANCE SHEET:

Monthly Operating Report -Corporate or Partnership Debtor

United States Trustee-Oregon

(Revised 3/4/11)

EXHIBIT C - Page 4 of 13
Case 14-36770-rld11   Doc 165   Filed 12/04/15

Case Number: 14-36770-rld11
Report Mo/Yr: October 2015

**Debtor:** Evergreen Vintage Aircraft, Inc.

| UST-13, COMPARATIVE CASH FLOW STATEMENT | | | | |
|---|---|---|---|---|
| As of month ending: | MO/YR 8/2015 | MO/YR 9/2015 | MO/YR 10/2015 | Cumulative Filing to Date |
| NET INCOME (LOSS) | | (19,712) | (326) | (88,927,492) |
| ADJUSTMENTS TO RECONCILE NET INCOME TO NET CASH: | | | | |
| Depreciation and Amortization | | | | |
| (Gain) Loss on Sale of Assets | | | | 88,991,347 |
| (Increase) Decrease in Prepaids | | | | |
| (Increase) Decrease in Receivables | | | | |
| (Increase) Decrease in Inventory | | | | |
| Increase (Decrease) in Payables | | 19,692 | (19,692) | |
| Increase (Decrease) in Taxes Payable | | | | |
| Increase (Decrease) in Professional Fees | | | | |
| Increase (Decrease) in Rents/Leases Pay | | | | |
| Increase (Decrease) in Accrued Interest | | | | |
| NET CASH PROVIDED BY OPERATIONS | - | (20) | (20,018) | 63,855 |
| CASH FLOWS FROM INVESTING/FINANCING: | | | | |
| Purchase of Fixed Assets | | | | |
| Proceeds from Sale of Fixed Assets | | | | 21,991,189 |
| Capital Contributions | | | | |
| Loan Proceeds | | | | |
| Loan Principal and Capital Lease Payments | | | | (21,017,275) |
| NET INCREASE (DECREASE) IN CASH | - | | (20,018) | 1,037,769 |
| BEGINNING CASH | 1,040,321 | 1,040,321 | 1,040,321 | - |
| ENDING CASH | 1,040,321 | 1,040,321 | 1,020,303 | 1,037,769 |

Monthly Operating Report -Corporate or Partnership Debtor
United States Trustee-Oregon
Page 5 of 13
(Revised 3/4/11)

EXHIBIT C - Page 5 of 13
Case 14-36770-rld11   Doc 165   Filed 12/04/15

| Case Number: | 14-36770-rld11 |
|---|---|
| Report Mo/Yr: | October 2015 |

**Debtor:** Evergreen Vintage Aircraft, Inc.

## UST-14, SUMMARY OF DISBURSEMENTS

**INSTRUCTIONS:** BEFORE COMPLETING THIS PAGE, prepare UST-14A (see next page) to include all bank accounts or other sources of the debtor's funds. The disbursement total will be used to complete this SUMMARY OF DISBURSEMENTS.

The debtor is responsible for providing accurate monthly disbursement totals for purposes of calculating its obligation pursuant to 28 U.S.C. § 1930(a)(6) to pay statutory fees to the U.S. Trustee. The disbursement total encompasses all payments made by the debtor during the reporting month, whether made directly by the debtor or by another party for the debtor. It includes checks written and cash payments for inventory and equipment purchases, payroll and related taxes and expenses, other operating costs, and debt reduction. It also includes payments made pursuant to joint check arrangements and those resulting from a sale or liquidation of the debtor's assets. The only transactions normally excluded from the disbursement total are transfers within the same reporting month between multiple debtor accounts.

The U.S. Trustee payment is due on the last day of the month following the end of each calendar quarter, or on **April 30, July 31, October 31, and January 31,** respectively. Because the amount billed is an estimate, the debtor is responsible for paying the correct statutory fee based on actual disbursements for the calendar quarter, or portion thereof while the debtor is in Chapter 11 (i.e. until the case is converted, dismissed, or closed by final decree). Failure to pay statutory fees to the U.S. Trustee is cause for conversion or dismissal of the case. A copy of the statutory fee schedule may be found in the Chapter 11 Guidelines on the U.S. Trustee's website located at:

> http://www.justice.gov/ust/r18/portland/chapter11.htm
> http://www.justice.gov/ust/r18/eugene/chapter11.htm

If you have any questions about how to compute the disbursement total, please call the U.S. Trustee's office:

Portland, OR    (503) 326-4000
Eugene, OR    (541) 465-6330

(UST-14A, with attachments, should follow this page.)

## COMPUTATION OF MONTHLY DISBURSEMENT TOTAL

| | | |
|---|---|---|
| Total disbursements from UST-14A | $ | (20,017.00) |
| Cash payments not included in total above (if any) | $ | - |
| Disbursements made by third parties for the debtor (if any, explain) | $ | - |

| | | | | |
|---|---|---|---|---|
| TOTAL DISBURSEMENTS THIS MONTH FROM ALL SOURCES | | | $ | (20,017.00) |

| | Yes | No |
|---|---|---|
| At the end of this reporting month, did the debtor have any delinquent statutory fees owing to the U.S. Trustee? | | XXX |

(If yes, list each quarter that is delinquent and the amount due along with an explanation)

| Quarter | Explanation | Amount |
|---|---|---|
| | | |
| | | |
| | | |

## UST-14A - STATEMENT OF CASH RECEIPTS AND DISBURSEMENTS

**INSTRUCTIONS:** Include all bank accounts or other source of the debtor's funds and attach supporting documents as indicated on the checklist below. Use additional sheets as necessary.

| Depository (Bank) Name<br>Account Number<br>Type of Account | 7/2015 | 8/2015 | 9/2015 | 10/2015 | TOTALS |
|---|---|---|---|---|---|
| **Beginning Cash Balance** | 1,040,321.00 | 1,049,995.00 | 1,049,995.00 | 1,049,975.00 | - |
| **Add:** | | | | | |
| Transfers in | | | | | 22,000,000.00 |
| Receipts deposited | 10,000.00 | | - | | 85,000.00 |
| Other (identify source) | | | | | - |
| Total Cash Receipts | 10,000.00 | - | - | - | 22,085,000.00 |
| | | | | | |
| **Subtract:** | | | | | |
| Transfers out | | | | | (21,033,897.00) |
| Disbursements by check or debit | (326.00) | | (20.00) | (20,017.00) | (21,145.00) |
| Cash withdrawn | | | | | - |
| Other (identify source) | | | | | - |
| Total Cash Disbursements | (326.00) | - | (20.00) | (20,017.00) | (21,055,042.00) |
| | | | | | |
| **Ending Cash Balance** | 1,049,995.00 | 1,049,995.00 | 1,049,975.00 | 1,029,958.00 | 1,029,958.00 |

Does each account identified above include the following supporting documents, as required: Indicate **YES, NO or NOT APPLICABLE** in the boxes below. **Account not opened until January 7, 2015**

Monthly bank statement copy
**(do not include bank statement copies with the report filed with the Bankruptcy Court)**

| YES | YES | YES | YES |
|---|---|---|---|

Bank reconciliation (including outstanding checks and deposits in transit)

| YES | YES | YES | YES |
|---|---|---|---|

A detailed list of receipts for the account (deposit log or receipts journal)

| | | | |
|---|---|---|---|

A detailed list of disbursements for the account (check register or disbursement journal)

| | | | |
|---|---|---|---|

Funds received and/or disbursed by another party

| | | | |
|---|---|---|---|

Monthly Operating Report -Corporate or Partnership Debtor

United States Trustee-Oregon

Page 7 of 13

(Revised 3/4/11)

**EXHIBIT C - Page 7 of 13**

Case 14-36770-rld11    Doc 165    Filed 12/04/15

Case Number: 14-36770-rld11
Report Mo/Yr: October 2015

**Debtor:** Evergreen Vintage Aircraft, Inc.

## UST-14B, ADDITIONAL DISBURSEMENT INFORMATION

**Payments on Pre-Petition Unsecured Debt (requires court approval)**

Did the debtor, or another party on behalf of the debtor, make any payments during this reporting month on pre-petition unsecured debt?   **If "yes", complete table for each payment.**

| Payee's Name | Nature of Payment | Payment Date | Amount | Date of Court Approval | Yes | No |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | XX |
| | | | | | | |
| | | | | | | |

**Payments to Attorneys and Other Professionals (requires court approval)**

Did the debtor, or another party on behalf of the debtor, make any payments during this reporting month to a professional such as an attorney, accountant, realtor, appraiser, auctioneer, business consultant, or other professional person?   **If "yes", complete table for each payment.**

| Professional's Name | Type of Work Performed | Payment Date | Amount | Date of Court Approval | Yes | No |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | XX |
| | | | | | | |

**Payments to an Officer, Director, Partner, or Other Insider of the Debtor**

Did the debtor, or another party on behalf of the debtor, make any payments during this reporting month to, or for the benefit of, an officer, director, partner, member, shareholder or other insider of the debtor? **If "yes", complete table for each payment.**

| Payee's Name | Relationship to Debtor | Payment Date | Amount | Purpose of Payment | Yes | No |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | XX |
| | | | | | | |
| | | | | | | |

INSTRUCTIONS:  Use the last column to describe the purpose of each payment, such as gross wages or salary, reimbursement for business expenses, loan repayment, advance, draw, bonus, dividend, stock distribution, or other reason for the payment.

**CERTIFICATION OF BANK ACCOUNTS:**

The undersigned certifies under penalty of perjury that every financial account used by the debtor is accounted for in UST-14A of this report and is held in a depository included on the U.S. Trustee's list of authorized depositories. The undersigned further certifies that each such depository has been notified that the account holder is a debtor in a Chapter 11 case under the jurisdiction of the Bankruptcy Court.

BY: _Lisa Anderson_                        DATE:  December 3, 2015

TITLE:  President

Monthly Operating Report -Corporate or Partnership Debtor

United States Trustee-Oregon

Page 8 of 13

(Revised 3/4/11)

EXHIBIT C - Page 8 of 13
Case 14-36770-rld11    Doc 165    Filed 12/04/15

Case Number: 14-36770-rld11
Report Mo/Yr: October 2015

**Debtor:** Evergreen Vintage Aircraft, Inc.

## UST-15, STATEMENT OF AGED RECEIVABLES

**INSTRUCTIONS:** Complete all portions of UST-15, STATEMENT OF AGED RECEIVABLES, unless the debtor asserts the following two statements are true for this reporting month:

° At the beginning of the reporting month, the debtor did not have any uncollected pre-petition or post-petition accounts receivable; and,

° During the reporting month, the debtor did not have any receivables activity, including the accrual of new accounts receivable, or the collection or write-off of accounts receivable from prior months.

**Initial here _____** if the debtor asserts that both statements above are correct and then skip to UST-16, **Statement of Post-Petition Payables.**

### Accounts Receivable Aging

|  | Balance at Month End | Current Portion | Past Due 31-60 days | Past Due 61-90 days | Past Due over 90 days | Uncollectible Receivables |
|---|---|---|---|---|---|---|
| Pre-petition | - |  |  |  |  |  |
| Post-petition | - | - |  | - |  |  |
| TOTALS | - | - | - | - | - | - |

Explain what efforts the debtor has made during the reporting period to collect receivables over 60 days past due.

### Accounts Receivable Reconciliation

|  | Post Petition | Pre-Petition | Totals |
|---|---|---|---|
| Opening Balance | - | - | - |
| Add: Sales on account | 85,000.00 |  | 85,000.00 |
| Less: Payments on account | (85,000.00) |  | (85,000.00) |
| Less: Write-offs or other adjustments |  |  | - |
| Closing Balance | - | - | - |

### Insider Receivable Reconciliation

| Insider Name (e.g. officer, director, partner, member, shareholder) Relationship to Debtor |  |  |  |
|---|---|---|---|
| Opening Balance (if first report, use the balance on date of filing) | - | - |  |
| Add: Current month advances |  |  |  |
| Less: Current month payments |  |  |  |
| Closing Balance | - | - | - |

Monthly Operating Report -Corporate or Partnership Debtor

United States Trustee-Oregon

Page 9 of 13

(Revised 3/4/11)

EXHIBIT C - Page 9 of 13
Case 14-36770-rld11    Doc 165    Filed 12/04/15

Case Number: 14-36770-rld11
Report Mo/Yr: October 2015

Debtor: Evergreen Vintage Aircraft, Inc.

## UST-16, STATEMENT OF AGED POST-PETITION PAYABLES
## PART A - TRADE ACCOUNTS PAYABLE

**INSTRUCTIONS:** Complete **PART A - TRADE ACCOUNTS PAYABLE** unless the debtor asserts that this statement is true for this reporting month:

° Except for taxes disclosed in PART B of this report, the debtor has no other unpaid post-petition payables from the current reporting month or from any prior post-petition months.

**Initial here _____ if the debtor asserts that the statement above is correct and then skip to UST-16, Part B, Taxes.**

**Accounts Payable Aging**

| | Balance at Month End | Current Portion | Past Due 31-60 days | Past Due 61-90 days | Past Due over 90 days |
|---|---|---|---|---|---|
| Post-petition | - | - | - | - | - |

1. For Accounts Payable **more than 30 days past due,** explain why payment has not been made.
   **No funds in account.**

2. Attach the debtor's accounts payable aging report.
   **Attached**

**Post-Petition Trade Accounts Payable Reconciliation**

| | |
|---|---|
| Opening Balance | - |
| Additions: | 20,994.00 |
| Less: Payments made | (20,994.00) |
| Closing Balance | - |

Monthly Operating Report -Corporate or Partnership Debtor

United States Trustee-Oregon

Page 10 of 13

(Revised 3/4/11)

EXHIBIT C - Page 10 of 13
Case 14-36770-rld11    Doc 165    Filed 12/04/15

Case Number: 14-36770-rld11
Report Mo/Yr: October 2015

**Debtor:** Evergreen Vintage Aircraft, Inc.

## UST-16, BUSINESS STATEMENT OF AGED POST-PETITION PAYABLES
## PART B - TAXES

**CERTIFICATION:** The undersigned certifies under penalty of perjury that all post-petition taxes required to be withheld or collected have been paid to the appropriate taxing authority or that a deposit for such amounts has been made into a separate bank tax account as more fully described below.

BY: _Lisa Anderson_

DATE: **December 3, 2015**

### Reconciliation of Unpaid Post-Petition Taxes

| Type of Tax | 1 Unpaid Post-petition Taxes from Prior Reporting Month | 2 Post-petition Taxes Accrued this Month (New Obligations) | 3 Post-petition Tax Payments Made this Reporting Month | 4 Unpaid Post-petition Taxes at End of Reporting Month (Column 1+2-3=4) |
|---|---|---|---|---|
| **FEDERAL EMPLOYMENT TAXES** | | | | |
| Employee Income Tax Withheld | | | | - |
| FICA/Medicare-Employee | | | | - |
| FICA/Medicare-Employer | | | | - |
| Unemployment (FUTA) | | | | - |
| **STATE EMPLOYMENT TAXES** | | | | |
| Employee Income Tax Withheld | | | | - |
| Unemployment (SUTA) | | | | - |
| Worker's Compensation | | | | - |
| **OTHER TAXES** | | | | |
| Corporate Income Tax | | | | - |
| Local City/County Tax | | | | - |
| Sales Tax | | | | - |
| Personal Property Tax | | | | - |
| Real Property Tax | | | | - |
| Other | | | | - |
| Total Unpaid Post-Petition Taxes | | | $ | - |

Is the debtor delinquent in any tax reporting? *If yes,* provide the name of the taxing authority, a description of the report that is past due, the original report due date, any payment due, and the reason for the delinquency.

Monthly Operating Report -Corporate or Partnership Debtor

United States Trustee-Oregon

Page 11 of 13

(Revised 3/4/11)

EXHIBIT C - Page 11 of 13
Case 14-36770-rld11    Doc 165    Filed 12/04/15

Case Number: 14-36770-rld11
Report Mo/Yr: October 2015

**Debtor:** Evergreen Vintage Aircraft, Inc.

---

## UST-17 STATEMENT OF OPERATIONS

INSTRUCTIONS: Answer each question fully and attach additional sheets as necessary to provide a complete response

---

**Question 1 - Sale of the Debtor's Assets**
Did the debtor, or another party on behalf of the the debtor, sell, transfer, or otherwise dispose of any of the debtor's assets during the reporting month that are out of the ordinary course of the debtor's business  **If yes, attach a schedule identifying each asset, date of sale notice, method of disposition, and gross and net sale proceeds received.  If real property was sold, attach a copy of the closing statement.**

| | Yes | No |
|---|---|---|
| | | X |

---

**Question 2 - Financing**
During the reporting month, did the debtor receive any financing, or loans from a non-insider funding source?  **If yes, indicate the source of the funds, date paid to debtor, dollar amount, and date of court approval.**

| Source of Funds | Date Paid | Amount | Date of Court Approval | Yes | No |
|---|---|---|---|---|---|
| | | | | | XX |

---

**Question 3 - Insider loans**
During the reporting month, did the debtor receive any funds from an officer, director, partner, member, shareholder, or other insider of the debtor?  **If yes, indicate the source of funds, date paid to debtor, dollar amount, and date of court approval.**

| Source of Funds | Date Paid | Amount | Date of Court Approval | Yes | No |
|---|---|---|---|---|---|
| | | | | | XX |

---

**Question 4 - Insurance and Bond Coverage**

| | Yes | No |
|---|---|---|
| Did the debtor renew or replace any insurance policies during this reporting month?  **If yes, attach a certificate of insurance for each renewal or change in coverage.** | | XX |
| Were any of the debtor's insurance policies canceled or otherwise terminated for any reason during the reporting month?  **If yes, explain.** | | XX |
| Were any claims made during this reporting month against the debtor's bond? (Answer "No" if the debtor is not required to have a bond).  **If yes, explain.** | | XX |

---

**Question 5 - Significant Events.**
Provide a narrative report of any significant events that may have an effect on the financial condition of the debtor or any events out of the ordinary course of business that are not described elsewhere in this report.  Attach separate sheets as necessary.

---

Monthly Operating Report -Corporate or Partnership Debtor

United States Trustee-Oregon

**EXHIBIT C - Page 12 of 13**
Case 14-36770-rld11    Doc 165    Filed 12/04/15

Case Number: 14-36770-rld11
Report Mo/Yr: October 2015

Debtor:       Evergreen Vintage Aircraft, Inc.

## UST-17, STATEMENT OF OPERATIONS (Continued)

**Question 6 - Case Progress.** Explain what progress the debtor has made during the reporting month toward confirmation of a plan of reorganization.

Debtor has reached a settlement with its largest creditors, following mediation of 3/26/15, 3/27/15 and 4/6/15. The Court entered an order approving the settlement on June 15, 2015 (Docket No.118), and the Debtor subsequently sold its assets as contemplated by the settlement. Debtor has commenced an adversary proceeding against World Fuel Services, Inc. to avoid that creditor's claim and asserted liens against the Debtor's assets. Debtor has been engaged in settlement discussions with World Fuel Services, Inc. Debtor intends to file a plan of liquidation to distribute.

| | Filed ? | Estimated Date To be Filed If not Filed |
|---|---|---|
| Disclosure Statement: | No | 12/4/2015 |
| Plan of Reorganization: | No | 12/4/2015 |

**WHERE TO FILE A MONTHLY OPERATING REPORT:** Local Bankruptcy Rule 2015-2 requires the debtor to file its monthly financial report with the U.S. Bankruptcy Court.

File the <u>original</u>....(select only one)

**For a Chapter 11 case filed in Portland, OR:**
United States Bankruptcy Court
1001 SW 5th Avenue, 7th floor
Portland, OR 97204

**For a Chapter 11 case filed in Eugene, OR:**
United States Bankruptcy Court
405 East 8th Avenue, Suite 2600
Eugene, OR 97401

**CERTIFICATION:** The undersigned certifies that copies of this report and supporting documents have been served upon each of the following persons in this case: U.S. Trustee; the chairperson of each official committee of creditors or equity security holders and the attorney(s) for each such committee; the debtor and the debtor's attorney; and the trustee and the trustee's attorney, if applicable.

BY: _Lisa Anderson_

TITLE:    **President**

DATE:    **December 3, 2015 2015**

PHONE NUMBER:   **503-550-2059**

Send U.S. Trustee's <u>copy</u> to: (select only one)

**For a Chapter 11 case filed in Portland, OR:**

Office of the United States Trustee
620 SW Main Street, Suite 213
Portland, OR 97205

**For a Chapter 11 case filed in Eugene, OR:**

Office of the United States Trustee
405 East 8th Avenue, Suite 1100
Eugene, OR 97401

**EXHIBIT C - Page 13 of 13**
Case 14-36770-rld11   Doc 165   Filed 12/04/15

**DEBTOR'S ASSETS (As of Effective Date):**

**Schedule A – Real Property:  NONE**

**Schedule B – Personal Property**

| Personal Property | Liquidation Value | Secured Debt | Liquidation Costs | Liquidation Equity |
|---|---|---|---|---|
| Cash and Bank Accounts | $1,057,786.01 | | $0.00 | $1,057,786.01 |
| Douglas A26 Invader | $20,000 | $20,000 | $0.00 | $0.00 |
| **Subtotal, Equity in Personal Property** | | | | **$1,057,786.01** |

| | |
|---|---|
| **NET EQUITY IN REAL ESTATE:** | **$0.00** |
| **NET EQUITY IN PERSONAL PROPERTY:** | **$1,057,786.01** |
| **TOTAL EQUITY AVAILABLE FOR CREDITORS:** | **$1,057,786.01** |

**LESS ADMINISTRATIVE EXPENSES:**

| | | |
|---|---|---|
| Motschenbacher & Blattner, LLP | $155,000.00 | |
| Chapter 7 Administrative Expenses | | |
| 25% - First $5,000 | $1,250.00 | |
| 10% - $5,000 - $50,000 | $4,500.00 | |
| 5% - $50,000 - $1,000,000 | $47,500.00 | |
| 3% - Over $1,000,000 | $1,733.58 | |
| **Subtotal Administrative Expenses:** | $209,983.58 | ($209,983.58) |

**LESS PRIORITY CLAIMS:**

| | | |
|---|---|---|
| IRS Priority Tax Claims | $2,500.00 | ($2,500.00) |

| | |
|---|---|
| **Subtotal, Available for Unsecured Creditors** | $845,302.43 |

**UNSECURED CLAIMS:**

| | | |
|---|---|---|
| Class 3 Unsecured Creditors | $70,330.22 | |
| Class 4 Unsecured Creditors | $21,509,293.86 | |
| Class 5 Unsecured Creditors | $10,951,335.98 | |
| Estimated Unsecured Claim Total:[2] | $32,530,960.06 | $32,530,960.06 |

| | |
|---|---|
| Projected Ch 7 Percentage Distribution to Unsecured Creditors: | 2.6% |

---

[2] Not including claims of insiders or affiliates.