Nicholas J. Henderson, OSB#074027
nhenderson@portlaw.com
Motschenbacher & Blattner, LLP
117 SW Taylor St., Suite 300
Portland, OR 97204
Telephone: (503) 417-0508
Facsimile: (503) 417-0528

Attorneys for Debtor Evergreen Vintage Aircraft, Inc.

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF OREGON

| | |
|---|---|
| In re:<br><br>EVERGREEN VINTAGE AIRCRAFT, INC.<br><br>Debtor. | Case No. 14-36770-rld11<br><br>DEBTOR'S ~~FIRST~~SECOND AMENDED PLAN OF LIQUIDATION<br><br>Dated ~~April 21~~May 9, 2016 |

## ARTICLE I
## SUMMARY

This First Amended Plan of Liquidation (the "Plan") under Chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of Evergreen Vintage Aircraft, Inc. (the "Debtor") from the sale of substantially all of the Debtor's assets.

This Plan provides for **2** classes of secured claims; ~~3~~**4** classes of unsecured claims; and **1** class of equity security holders. Unsecured creditors will receive distributions in differing amounts. Unsecured creditors in Class 3 will receive a pro-rata share of the GUC Fund (as defined below). Equity security holders will not retain their interests, and the Debtor will be dissolved after performance of this Plan. This Plan also provides for the payment of administrative claims. All distributions will be paid from proceeds remaining after the sale of substantially all of the Debtor's assets, which has already occurred.

All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)

# ARTICLE II
# CLASSIFICATION OF CLAIMS AND INTERESTS

2.01     Class 1.  Disputed secured claim of World Fuel Services, Inc.  Class 1 consists of the secured claim asserted by World Fuel Services, Inc.

2.02     Class 2.  Disputed secured claim of Umpqua Bank.  Class 2 consists of the disputed secured claim asserted by Umpqua Bank.

2.03     General Unsecured Claims:

(a) Class ~~3~~3A.  General Unsecured Creditors Not Separately Classified.  Class ~~3~~3A consists of those creditors holding General Unsecured Claims not separately classified by this Plan.

(b) Class 3B.  Remaining General Unsecured Claims, Including Certain Affiliates.  Class 3B consists of Alfred T. Giuliano, Chapter 7 Trustee for Evergreen Aviation Ground Logistics Enterprise, Inc.; Evergreen Defense & Security Services, Inc.; Evergreen International Airlines, Inc.; Evergreen International Aviation, Inc.; Evergreen Systems Logistics, Inc.; Evergreen Trade, Inc.; and Supertanker Services, Inc.

2.04     Class 4.  Evergreen Helicopters, Inc.  Class 4 consists of the disputed, contingent and unliquidated claim of Evergreen Helicopters, Inc.

2.05     Class 5.  Insider and affiliate claims.  Class 5 consists of claims held by certain insiders and affiliates of the Debtor.

2.06     Class 6.  Equity interests of the Debtor.

# ARTICLE III
# TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,
# U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

3.01     Unclassified Claims.  Under section §1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

3.02     Administrative Expense Claims.  Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the effective date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

3.03     Priority Tax Claims.  Each holder of a priority tax claim will be paid in full on the Effective Date of the Plan.

3.04     United States Trustee Fees.  All U.S. Trustee fees required to be paid by 28 U.S.C. §1930 will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.  Any U.S. Trustee Fees owed on or before the Effective Date will be paid on the Effective Date.

# ARTICLE IV
# TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

Claims and interests shall be treated as follows under this Plan:

Class 1 – <u>World Fuel Services, Inc.'s Disputed Secured Claim.</u>

Class 1 is impaired. Class 1 consists of the disputed secured claims of World Fuel Services, Inc. against the Debtor's Douglas A-26 Invader, and against $525,000 of the cash proceeds from the sale of a DeHavilland DHM1. Pursuant to the settlement between the parties, which has been approved by the Court, World Fuel's liens will be partially avoided, and, ~~within three (3) business days following~~ on or before the Effective Date of this Plan, the Debtor shall transfer possession and title of the Douglas A-26 Invader to World Fuel Services, Inc. and pay World Fuel Services, inc. a cash payment of $400,000, without interest. This distribution amounts to approximately 3.66% of the Class 1 claim. World Fuel Services, Inc. has consented to this treatment.

Class 2 – <u>Umpqua Bank Disputed Secured Claim.</u>

Class 2 is impaired. Umpqua Bank asserted a secured claim of $42,009,293.86 against the Debtor in the bankruptcy [Claim No. 6]. As part of an overall settlement approved pursuant to the Order Approving (1) Proposed Global Settlement; and (2) Sale of Debtor's Real and Personal Property Free and Clear of Liens entered on June 15, 2015 [Docket No. 118], Umpqua Bank agreed to accept $21 million as treatment for its allowed claim, with $20.5 million paid at the time the settlement was approved (the "Fixed Umpqua Payment") and $500,000 paid when a purported lien by World Fuel as to the DeHavilland DH4-M1 was avoided (the "Contingent Umpqua Payment"). The Fixed Umpqua Payment was made and the Contingent Umpqua Payment is owing as the World Fuel Services, Inc. lien has been partially avoided. To facilitate the Debtor's settlement with World Fuel Services, Inc., Umpqua has agreed to reduce the required Contingent Umpqua Payment from $500,000 down to $469,835 and to be paid this amount through a confirmed plan. Therefore, Class 2 consists of the disputed secured claims of Umpqua Bank which has been resolved by a settlement ~~that has been~~ approved by the Court. Pursuant to the Court's Order Approving Settlement Payment to Umpqua Bank entered May 6, 2016 [Docket No. 214], Umpqua Bank shall receive a cash payment of $469,835~~, without interest, within three (3) business days of~~.00 on or before the Effective Date~~.~~. This distribution amounts to approximately 2.2% of the Class 2 claim. Umpqua Bank has consented to this treatment.

Class ~~3~~3A – <u>General Unsecured Claims Not Otherwise Separately Classified</u>

Class ~~3~~3A is impaired. Each holder of a Class ~~3~~3A Unsecured Claim will be paid its pro-rata share of $20,000 (the "GUC Fund"), and any other proceeds of assets not otherwise distributed to creditors in Class 1 and Class 2, without interest, within three (3) business days following the later of either 1) the Effective Date of this Plan; or 2) the date on which such claim is allowed by a final non-appealable order. It is anticipated that Class 3 claims will receive ~~between less than 1% to~~ approximately 28.44% of their claims~~, depending on the results of the objections to claims.~~. For the avoidance of doubt, although Umpqua Bank and World Fuel Services, Inc. each have a substantial deficiency claim entitled to treatment under Class 3A, they shall not receive, and have each agreed not to receive, any distributions ~~from the GUC Fund~~ under this Plan other than the amounts to which they are entitled as set forth in Class 1 and 2, respectively, unless the other Class ~~3~~3A claims are paid in full.

Page 3 of 9 – SECOND AMENDED PLAN OF LIQUIDATION

Class 3B – General Unsecured Claims of Certain Affiliates

Class 3B is impaired. Class 3B consists of the claims of Alfred T. Giuliano, Chapter 7 Trustee for Evergreen Aviation Ground Logistics Enterprise, Inc.; Evergreen Defense & Security Services, Inc.; Evergreen International Airlines, Inc.; Evergreen International Aviation, Inc.; Evergreen Systems Logistics, Inc.; Evergreen Trade, Inc.; and Supertanker Services, Inc. The holder of the Class 3B Unsecured Claim will be paid after the Class 3A creditors are paid in full with any other proceeds of assets not otherwise distributed to creditors in Class 1, Class 2 and Class 3A, without interest, within three (3) business days following the later of either 1) the date that such funds become available to the reorganized Debtor; or 2) the date on which such claim is allowed by a final non-appealable order.

Class 4 – Disputed Claim of Evergreen Helicopters, Inc.

Class 4 is impaired. Class 4 consists of the disputed, contingent and unliquidated claim for contribution filed by Evergreen Helicopters, Inc. No payment will be made to the Class 4 claim unless the holders of claims in Classes 1 through 3 are paid in full.

Class 5 – Insider and Affiliate Claims

Class 5 is impaired. Class 5 consists of the unsecured claims held by certain insiders and affiliates of the Debtor. Specifically, Class 5 includes the unsecured claims by any of the following:

- The Estate of Delford M. Smith;
- Evergreen Holdings, Inc.;
- Michael King Smith Foundation;
- Ventures Acquisition Company, LLC; and
- Ventures Holdings, Inc.

No payment is to be made to the Class 5 claims unless the holders of claims in Classes 1 through 4 are paid in full.

Class 6 – Equity Interests

Equity Holders shall not retain or receive any property from the Debtor.

## ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01 Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated; and (iii) claims filed by any of the following entities, against which the Debtor may file formal claim objections at the appropriate time, when its investigation of such claims has been concluded:

- Alfred T. Giuliano, Chapter 7 Trustee for Evergreen Aviation Ground Logistics Enterprise, Inc., Evergreen Defense & Security Services, Inc., Evergreen International Airlines, Inc., Evergreen International Aviation, Inc., Evergreen Systems Logistics, Inc., Evergreen Trade, Inc. and Supertanker Services, Inc.; and

- Evergreen Helicopters, Inc.

The Debtor reserves and preserves in perpetuity all rights to object to any claims filed in the above-captioned bankruptcy case or asserted against the Debtor and its estate.

     5.02   Delay of Distribution on a Disputed Claim. No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

     5.03   Settlement of Disputed Claims. The Debtor will have the power and authority to settle and compromise a disputed claim without court approval.

## ARTICLE VI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtor does not believe it has any executory contracts to assume or reject, however, to the extent there are any unexpired executory contracts not already otherwise rejected, they shall be deemed rejected as of the Effective Date of this Plan.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

     7.01   <u>Payments from Available Cash and Contribution from Delford M. Smith Estate</u>.

On June 19, 2015, the Court entered an Order Approving (1) Proposed Global Settlement; and (2) Sale of Debtor's Real and Personal Property Free & Clear of Liens [Docket No. 118] (the "Global Settlement")[1]. Shortly thereafter, the Debtor sold all of its real and personal property, which was encumbered, for $22,000,000. From the sale proceeds, the Debtor paid closing costs, real and personal property taxes, part of Umpqua Bank's secured claim, and the US Trustee's quarterly fees. In addition to the sale proceeds, the Debtor has collected all receivables, and has $1,037,769.56 of total cash available to make the distributions required under this Plan. The cash available constitutes the entirety of the Debtor's remaining assets.

In addition to the Debtor's cash on hand, the Estate of Delford M. Smith will make a cash contribution to the Debtor, in the amount of $20,165.00, to provide the additional funds needed to make distributions required under this Plan.

---

[1] Certain conditions precedent set forth in the Global Settlement as to the Bankruptcy Trustee (as defined in the Global Settlement) were not satisfied, and he also did not execute the Global Settlement, therefore the Bankruptcy Trustee's disputed claim shall be treated in Class ~~3~~3B of this Plan.

Page 5 of 9 – <u>SECOND AMENDED</u> PLAN OF LIQUIDATION

7.02 Retention of Avoidance Claims. Avoidance Claims, if any, are retained. Any holder of a Claim against the Debtor shall automatically have such Claim disallowed without further action by the Debtor or order of this Court if the holder of a Claim fails to repay the Debtor any sum that may be recoverable by the Debtor under Bankruptcy Code §§ 522(f), 522(h), 542, 543, 544, 545, 547, 548, 549, 550 or 724(a) within ten days of a final judgment in the Debtor's favor against such Claim holder, unless such Creditor has posted a supersedeas bond for the entire amount of the Debtor's judgment. The Debtor is not aware of any avoidance claims, and does not intend to pursue them.

7.03 Retention of Third-Party Claims. Except as otherwise provided in this Plan, the Debtor retains all third-party claims.

7.04 No Interest. Except as expressly stated in the Plan or otherwise allowed by the Bankruptcy Court, no interest, penalty or late charge arising after the Petition Date shall be allowed on any Claim, and the Debtor shall be entitled to offset the distribution to any Creditor who has received payment for postpetition, interest, penalties or late charges not approved by the Court.

7.05 Time Bar to Cashing Checks. The Debtor may (but shall not be obligated to) stop payment on any check issued by it for an allowed claim if such check is not presented for payment within 60 days after the date of issuance thereof. Any request for reissuance of any check shall be made to the Debtor in accordance with this Plan, by the holder of the allowed claim to whom such check originally was issued, prior to the expiration of the 180-day period following the Effective Date. After such date, the holder of any such Claim who has failed to make a timely request for reissuance of such a voided check shall not be entitled to any other or further distribution under this Plan on account of such voided check or such claim, and any funds remaining as a result will be distributed pro-rata to Class 3 claim holders.

## ARTICLE VIII
## SECTION 1129(b) REQUEST

If thePlan meets the requirements of all provisions of 11 U.S.C. § 1129(a), except Paragraph 8 thereof, Debtor hereby requests confirmation of the Plan pursuant to 11 U.S.C. § 1129(b).

## ARTICLE IX
## GENERAL PROVISIONS

9.01 Definitions and Rules of Construction. The definitions and rules of construction set forth in §§ 101 and 102 of the United States Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan.

9.02 Effective Date of Plan. The effective date of this Plan is the first business day following entry of an order confirming the Plan (the "Effective Date"). If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay of the confirmation order expires or is otherwise terminated.

9.03 Severability. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

9.04 Binding Effect. ~~The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity~~ Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms, conditions, rights and obligations of this Plan shall be immediately effective, enforceable and binding upon the Debtor, any holder of any claims or interests (regardless of whether such claims or interests are deemed to have accepted or rejected the Plan), all persons and entities that are parties to, or are subject to, the Plan, the settlements and the compromises described in the Plan, each entity acquiring property under the Plan, and any and all non-Debtor parties to an executory contract and unexpired leases with the Debtor. All claims, rights and debts will be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any holder of a claim or debt has voted on the Plan, and (with the express exception of the settlements and Orders relating to settlements including the Order Approving the Global Settlement [ECF No. 118] solely as they relate to Umpqua) the Plan shall and does supersede any non-settlement contract, agreement, rule, or Order at issue in this proceeding that is inconsistent with the terms, provisions or treatment of any party or entity in the Plan.

9.05 Waiver. After entry of the Confirmation Order and except as otherwise specifically set forth in the Plan, any term of the Plan may be waived by the party benefitted by the term, but only in a writing signed by the waiving party, which will be effective without notice or Court approval.

9.06 Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

9.07 Controlling Effect. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Oregon govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan, which shall supersede any other contract, agreement, rule, or order that is inconsistent with the terms, provisions or treatment of this Plan.

## ARTICLE IX – DEFAULT

Except as otherwise specifically provided in the Plan, in the event Debtor shall default in the performance of any of its obligations under the Plan, then a claimant may pursue such remedies as are available at law or in equity. An event of default occurring with respect to one Claim shall not be an event of default with respect to any other Claim. Nothing contained in the Plan shall limit the right of any party to reopen this case or to convert this case to a liquidation case under Chapter 7 of the Bankruptcy Code if cause for such relief exists.

Debtor shall be entitled to written notice of any claimed default under the Plan, and shall have twenty (20) days opportunity to cure. If such claimed default is cured within the twenty (20) days cure period, then such Creditor shall not be entitled to enf orce any remedies which would otherwise be available on account of such default. If Debtor fails to cure within the twenty (20) days cure period, then such Creditor may seek such remedies as are granted by law to enforce its rights arising under and pursuant to the Plan, including seeking an order to compel such performance. The default and cure provisions contained in this Plan shall supercede any provisions concerning default and cure contained in any other agreement between Debtor and any Creditor affected by this Plan.

Notice of default shall be effective when served simultaneously via email at the email addresses shown below and mailed to both the Debtor and to the Debtor's attorney, if any, postage prepaid, at the following addresses:

> Debtor: Evergreen Vintage Aircraft, Inc.
> Attn: Lisa Anderson, President
> 1271 NE Hwy 99W, PMB 502
> McMinnville, OR 97128
>
> Debtor's Attorney: Nicholas J. Henderson
> Motschenbacher & Blattner, LLP
> 117 SW Taylor Street, Suite 300
> Portland, OR 97204
> Email: nhenderson@portlaw.com

## ARTICLE X. -- RETENTION OF JURISDICTION

Notwithstanding the entry of the order confirming the Plan, the Court shall retain jurisdiction of this Chapter 11 case pursuant to and for the purposes set forth in 11 U.S.C. § 1127(b) and (a) to classify the Claim of any Creditor, reexamine Claims which have been allowed for voting purposes and determine any objection that may be filed to Claims; (b) to determine requests for payment of Claims entitled to priority under § 507(a)(2) of the Code, including compensation and reimbursement of expenses in favor of professionals employed at the expense of the estate; (c) to avoid transfers or obligations and to subordinate Claims under Chapter 5 of the Bankruptcy Code; (d) to approve the assumption, assignment or rejection of executory contracts and unexpired leases pursuant to 11 U.S.C. §§ 365 and 1123; (e) to resolve all controversies and disputes regarding the interpretation of the Plan; (f) to implement the provisions of the Plan and enter orders in aid of confirmation; (g) to adjudicate any and all adversary proceedings and contested matters pending or hereafter commenced in this Chapter 11 case; (h) to enter a final decree closing this Chapter 11 case; for such other matters as may be set forth in the Confirmation Order; and (i) to determine the nature and extent of Debtor's ownership, or rights in property held by the Debtor as of the Petition Date, including but not limited to actions to quiet title.

## ARTICLE XI
## NO DISCHARGE OF DEBTOR

10.01 <u>No Discharge</u>. In accordance with § 1141(d)(3)(A) of the Code, the Debtor will not receive any discharge of debt in this bankruptcy case.

Respectfully submitted,

EVERGREEN VINTAGE AIRCRAFT, INC.

Page 8 of 9 – <u>SECOND AMENDED</u> PLAN OF LIQUIDATION

Case 14-36770-rld11    Doc 221    Filed 05/10/16

By: /s/ Lisa Anderson
Lisa Anderson,
as President of Evergreen Vintage Aircraft, Inc.
The Plan Proponent

By: /s/ Nicholas J. Henderson
Nicholas J. Henderson OR: 074027
Attorney for the Plan Proponent

Nicholas J. Henderson, OSB#074027
nhenderson@portlaw.com
Motschenbacher & Blattner, LLP
117 SW Taylor St., Suite 300
Portland, OR 97204
Telephone: (503) 417-0508
Facsimile: (503) 417-0528

Attorneys for Debtor Evergreen Vintage Aircraft, Inc.

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF OREGON

| | |
|---|---|
| In re:<br><br>EVERGREEN VINTAGE AIRCRAFT, INC.<br><br>Debtor. | Case No. 14-36770-rld11<br><br>DEBTOR'S SECOND AMENDED PLAN OF LIQUIDATION<br><br>Dated May 9, 2016 |

## ARTICLE I
## SUMMARY

This First Amended Plan of Liquidation (the "Plan") under Chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of Evergreen Vintage Aircraft, Inc. (the "Debtor") from the sale of substantially all of the Debtor's assets.

This Plan provides for **2** classes of secured claims; **4** classes of unsecured claims; and **1** class of equity security holders. Unsecured creditors will receive distributions in differing amounts. Unsecured creditors in Class 3 will receive a pro-rata share of the GUC Fund (as defined below). Equity security holders will not retain their interests, and the Debtor will be dissolved after performance of this Plan. This Plan also provides for the payment of administrative claims. All distributions will be paid from proceeds remaining after the sale of substantially all of the Debtor's assets, which has already occurred.

All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)

# ARTICLE II
# CLASSIFICATION OF CLAIMS AND INTERESTS

2.01     Class 1.  Disputed secured claim of World Fuel Services, Inc.  Class 1 consists of the secured claim asserted by World Fuel Services, Inc.

2.02     Class 2.  Disputed secured claim of Umpqua Bank.  Class 2 consists of the disputed secured claim asserted by Umpqua Bank.

2.03     General Unsecured Claims:

(a) Class 3A.  General Unsecured Creditors Not Separately Classified.  Class 3A consists of those creditors holding General Unsecured Claims not separately classified by this Plan.

(b) Class 3B.  Remaining General Unsecured Claims, Including Certain Affiliates.  Class 3B consists of Alfred T. Giuliano, Chapter 7 Trustee for Evergreen Aviation Ground Logistics Enterprise, Inc.; Evergreen Defense & Security Services, Inc.; Evergreen International Airlines, Inc.; Evergreen International Aviation, Inc.; Evergreen Systems Logistics, Inc.; Evergreen Trade, Inc.; and Supertanker Services, Inc.

2.04     Class 4.  Evergreen Helicopters, Inc.  Class 4 consists of the disputed, contingent and unliquidated claim of Evergreen Helicopters, Inc.

2.05     Class 5.  Insider and affiliate claims.  Class 5 consists of claims held by certain insiders and affiliates of the Debtor.

2.06     Class 6.  Equity interests of the Debtor.

# ARTICLE III
# TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,
# U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

3.01     Unclassified Claims.  Under section §1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

3.02     Administrative Expense Claims.  Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the effective date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

3.03     Priority Tax Claims.  Each holder of a priority tax claim will be paid in full on the Effective Date of the Plan.

3.04     United States Trustee Fees.  All U.S. Trustee fees required to be paid by 28 U.S.C. §1930 will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.  Any U.S. Trustee Fees owed on or before the Effective Date will be paid on the Effective Date.

# ARTICLE IV
# TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

Claims and interests shall be treated as follows under this Plan:

Class 1 – <u>World Fuel Services, Inc.'s Disputed Secured Claim.</u>

Class 1 is impaired. Class 1 consists of the disputed secured claims of World Fuel Services, Inc. against the Debtor's Douglas A-26 Invader, and against $525,000 of the cash proceeds from the sale of a DeHavilland DHM1. Pursuant to the settlement between the parties, which has been approved by the Court, World Fuel's liens will be partially avoided, and, on or before the Effective Date of this Plan, the Debtor shall transfer possession and title of the Douglas A-26 Invader to World Fuel Services, Inc. and pay World Fuel Services, inc. a cash payment of $400,000, without interest. This distribution amounts to approximately 3.66% of the Class 1 claim. World Fuel Services, Inc. has consented to this treatment.

Class 2 – <u>Umpqua Bank Disputed Secured Claim.</u>

Class 2 is impaired. Umpqua Bank asserted a secured claim of $42,009,293.86 against the Debtor in the bankruptcy [Claim No. 6]. As part of an overall settlement approved pursuant to the Order Approving (1) Proposed Global Settlement; and (2) Sale of Debtor's Real and Personal Property Free and Clear of Liens entered on June 15, 2015 [Docket No. 118], Umpqua Bank agreed to accept $21 million as treatment for its allowed claim, with $20.5 million paid at the time the settlement was approved (the "Fixed Umpqua Payment") and $500,000 paid when a purported lien by World Fuel as to the DeHavilland DH4-M1 was avoided (the "Contingent Umpqua Payment"). The Fixed Umpqua Payment was made and the Contingent Umpqua Payment is owing as the World Fuel Services, Inc. lien has been partially avoided. To facilitate the Debtor's settlement with World Fuel Services, Inc., Umpqua has agreed to reduce the required Contingent Umpqua Payment from $500,000 down to $469,835 and to be paid this amount through a confirmed plan. Therefore, Class 2 consists of the disputed secured claims of Umpqua Bank which has been resolved by a settlement that has been approved by the Court. Pursuant to the Court's Order Approving Settlement Payment to Umpqua Bank entered May 6, 2016 [Docket No. 214], Umpqua Bank shall receive a cash payment of $469,835.00 on or before the Effective Date.. This distribution amounts to approximately 2.2% of the Class 2 claim. Umpqua Bank has consented to this treatment.

Class 3A – <u>General Unsecured Claims Not Otherwise Separately Classified</u>

Class 3A is impaired. Each holder of a Class 3A Unsecured Claim will be paid its pro-rata share of $20,000 (the "GUC Fund"), and any other proceeds of assets not otherwise distributed to creditors in Class 1 and Class 2, without interest, within three (3) business days following the later of either 1) the Effective Date of this Plan; or 2) the date on which such claim is allowed by a final non-appealable order. It is anticipated that Class 3 claims will receive approximately 28.44% of their claims. For the avoidance of doubt, although Umpqua Bank and World Fuel Services, Inc. each have a substantial deficiency claim entitled to treatment under Class 3A, they shall not receive, and have each agreed not to receive, any distributions under this Plan other than the amounts to which they are entitled as set forth in Class 1 and 2, respectively, unless the other Class 3A claims are paid in full.

Class 3B – <u>General Unsecured Claims of Certain Affiliates</u>

Class 3B is impaired. Class 3B consists of the claims of Alfred T. Giuliano, Chapter 7 Trustee for Evergreen Aviation Ground Logistics Enterprise, Inc.; Evergreen Defense & Security Services, Inc.; Evergreen International Airlines, Inc.; Evergreen International Aviation, Inc.; Evergreen Systems Logistics, Inc.; Evergreen Trade, Inc.; and Supertanker Services, Inc. The holder of the Class 3B Unsecured Claim will be paid after the Class 3A creditors are paid in full with any other proceeds of assets not otherwise distributed to creditors in Class 1, Class 2 and Class 3A, without interest, within three (3) business days following the later of either 1) the date that such funds become available to the reorganized Debtor; or 2) the date on which such claim is allowed by a final non-appealable order.

Class 4 – <u>Disputed Claim of Evergreen Helicopters, Inc.</u>

Class 4 is impaired. Class 4 consists of the disputed, contingent and unliquidated claim for contribution filed by Evergreen Helicopters, Inc. No payment will be made to the Class 4 claim unless the holders of claims in Classes 1 through 3 are paid in full.

Class 5 – <u>Insider and Affiliate Claims</u>

Class 5 is impaired. Class 5 consists of the unsecured claims held by certain insiders and affiliates of the Debtor. Specifically, Class 5 includes the unsecured claims by any of the following:

- The Estate of Delford M. Smith;
- Evergreen Holdings, Inc.;
- Michael King Smith Foundation;
- Ventures Acquisition Company, LLC; and
- Ventures Holdings, Inc.

No payment is to be made to the Class 5 claims unless the holders of claims in Classes 1 through 4 are paid in full.

Class 6 – <u>Equity Interests</u>

Equity Holders shall not retain or receive any property from the Debtor.

## ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01 Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated; and (iii) claims filed by any of the following entities, against which the Debtor may file formal claim objections at the appropriate time, when its investigation of such claims has been concluded:

- Alfred T. Giuliano, Chapter 7 Trustee for Evergreen Aviation Ground Logistics Enterprise, Inc., Evergreen Defense & Security Services, Inc., Evergreen International Airlines, Inc., Evergreen

International Aviation, Inc., Evergreen Systems Logistics, Inc., Evergreen Trade, Inc. and Supertanker Services, Inc.; and

- Evergreen Helicopters, Inc.

The Debtor reserves and preserves in perpetuity all rights to object to any claims filed in the above-captioned bankruptcy case or asserted against the Debtor and its estate.

5.02 Delay of Distribution on a Disputed Claim. No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.03 Settlement of Disputed Claims. The Debtor will have the power and authority to settle and compromise a disputed claim without court approval.

## ARTICLE VI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtor does not believe it has any executory contracts to assume or reject, however, to the extent there are any unexpired executory contracts not already otherwise rejected, they shall be deemed rejected as of the Effective Date of this Plan.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

7.01 <u>Payments from Available Cash and Contribution from Delford M. Smith Estate</u>.

On June 19, 2015, the Court entered an Order Approving (1) Proposed Global Settlement; and (2) Sale of Debtor's Real and Personal Property Free & Clear of Liens [Docket No. 118] (the "Global Settlement")[1]. Shortly thereafter, the Debtor sold all of its real and personal property, which was encumbered, for $22,000,000. From the sale proceeds, the Debtor paid closing costs, real and personal property taxes, part of Umpqua Bank's secured claim, and the US Trustee's quarterly fees. In addition to the sale proceeds, the Debtor has collected all receivables, and has $1,037,769.56 of total cash available to make the distributions required under this Plan. The cash available constitutes the entirety of the Debtor's remaining assets.

In addition to the Debtor's cash on hand, the Estate of Delford M. Smith will make a cash contribution to the Debtor, in the amount of $20,165.00, to provide the additional funds needed to make distributions required under this Plan.

7.02 <u>Retention of Avoidance Claims</u>. Avoidance Claims, if any, are retained. Any holder of a Claim against the Debtor shall automatically have such Claim disallowed without further action by the Debtor or order of this Court if the holder of a Claim fails to repay the Debtor any sum that may be recoverable by the Debtor under Bankruptcy Code §§ 522(f), 522(h), 542, 543, 544, 545, 547, 548, 549, 550 or 724(a) within ten days of a final judgment in the Debtor's favor against such Claim holder, unless

---

[1] Certain conditions precedent set forth in the Global Settlement as to the Bankruptcy Trustee (as defined in the Global Settlement) were not satisfied, and he also did not execute the Global Settlement, therefore the Bankruptcy Trustee's disputed claim shall be treated in Class 3B of this Plan.

Page 5 of 8 – SECOND AMENDED PLAN OF LIQUIDATION

such Creditor has posted a supersedeas bond for the entire amount of the Debtor's judgment. The Debtor is not aware of any avoidance claims, and does not intend to pursue them.

       7.03    <u>Retention of Third-Party Claims</u>.  Except as otherwise provided in this Plan, the Debtor retains all third-party claims.

       7.04    <u>No Interest</u>.  Except as expressly stated in the Plan or otherwise allowed by the Bankruptcy Court, no interest, penalty or late charge arising after the Petition Date shall be allowed on any Claim, and the Debtor shall be entitled to offset the distribution to any Creditor who has received payment for postpetition, interest, penalties or late charges not approved by the Court.

       7.05    <u>Time Bar to Cashing Checks</u>.  The Debtor may (but shall not be obligated to) stop payment on any check issued by it for an allowed claim if such check is not presented for payment within 60 days after the date of issuance thereof. Any request for reissuance of any check shall be made to the Debtor in accordance with this Plan, by the holder of the allowed claim to whom such check originally was issued, prior to the expiration of the 180-day period following the Effective Date. After such date, the holder of any such Claim who has failed to make a timely request for reissuance of such a voided check shall not be entitled to any other or further distribution under this Plan on account of such voided check or such claim, and any funds remaining as a result will be distributed pro-rata to Class 3 claim holders.

## ARTICLE VIII
## SECTION 1129(b) REQUEST

       If thePlan meets the requirements of all provisions of 11 U.S.C. § 1129(a), except Paragraph 8 thereof, Debtor hereby requests confirmation of the Plan pursuant to 11 U.S.C. § 1129(b).

## ARTICLE IX
## GENERAL PROVISIONS

       9.01    <u>Definitions and Rules of Construction</u>.  The definitions and rules of construction set forth in §§ 101 and 102 of the United States Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan.

       9.02    <u>Effective Date of Plan</u>.  The effective date of this Plan is the first business day following entry of an order confirming the Plan (the "Effective Date").  If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay of the confirmation order expires or is otherwise terminated.

       9.03    <u>Severability</u>.  If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

       9.04    <u>Binding Effect</u>.   Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms, conditions, rights and obligations of this Plan shall be immediately effective, enforceable and binding upon the Debtor, any holder of any claims or interests (regardless of whether such claims or interests are deemed to have accepted or rejected the Plan), all persons and entities that are parties to, or are subject to, the Plan, the settlements and the

compromises described in the Plan, each entity acquiring property under the Plan, and any and all non-Debtor parties to an executory contract and unexpired leases with the Debtor. All claims, rights and debts will be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any holder of a claim or debt has voted on the Plan, and (with the express exception of the settlements and Orders relating to settlements including the Order Approving the Global Settlement [ECF No. 118] solely as they relate to Umpqua) the Plan shall and does supersede any non-settlement contract, agreement, rule, or Order at issue in this proceeding that is inconsistent with the terms, provisions or treatment of any party or entity in the Plan.

      9.05    <u>Waiver</u>. After entry of the Confirmation Order and except as otherwise specifically set forth in the Plan, any term of the Plan may be waived by the party benefitted by the term, but only in a writing signed by the waiving party, which will be effective without notice or Court approval.

      9.06    <u>Captions</u>. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

      9.07    <u>Controlling Effect</u>. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Oregon govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan, which shall supersede any other contract, agreement, rule, or order that is inconsistent with the terms, provisions or treatment of this Plan.

## ARTICLE IX – DEFAULT

Except as otherwise specifically provided in the Plan, in the event Debtor shall default in the performance of any of its obligations under the Plan, then a claimant may pursue such remedies as are available at law or in equity. An event of default occurring with respect to one Claim shall not be an event of default with respect to any other Claim. Nothing contained in the Plan shall limit the right of any party to reopen this case or to convert this case to a liquidation case under Chapter 7 of the Bankruptcy Code if cause for such relief exists.

Debtor shall be entitled to written notice of any claimed default under the Plan, and shall have twenty (20) days opportunity to cure. If such claimed default is cured within the twenty (20) days cure period, then such Creditor shall not be entitled to enforce any remedies which would otherwise be available on account of such default. If Debtor fails to cure within the twenty (20) days cure period, then such Creditor may seek such remedies as are granted by law to enforce its rights arising under and pursuant to the Plan, including seeking an order to compel such performance. The default and cure provisions contained in this Plan shall supercede any provisions concerning default and cure contained in any other agreement between Debtor and any Creditor affected by this Plan.

Notice of default shall be effective when served simultaneously via email at the email addresses shown below and mailed to both the Debtor and to the Debtor's attorney, if any, postage prepaid, at the following addresses:

                Debtor: Evergreen Vintage Aircraft, Inc.
                Attn: Lisa Anderson, President
                1271 NE Hwy 99W, PMB 502
                McMinnville, OR 97128

Debtor's Attorney: Nicholas J. Henderson
Motschenbacher & Blattner, LLP
117 SW Taylor Street, Suite 300
Portland, OR 97204
Email: nhenderson@portlaw.com

## ARTICLE X. -- RETENTION OF JURISDICTION

Notwithstanding the entry of the order confirming the Plan, the Court shall retain jurisdiction of this Chapter 11 case pursuant to and for the purposes set forth in 11 U.S.C. § 1127(b) and (a) to classify the Claim of any Creditor, reexamine Claims which have been allowed for voting purposes and determine any objection that may be filed to Claims; (b) to determine requests for payment of Claims entitled to priority under § 507(a)(2) of the Code, including compensation and reimbursement of expenses in favor of professionals employed at the expense of the estate; (c) to avoid transfers or obligations and to subordinate Claims under Chapter 5 of the Bankruptcy Code; (d) to approve the assumption, assignment or rejection of executory contracts and unexpired leases pursuant to 11 U.S.C. §§ 365 and 1123; (e) to resolve all controversies and disputes regarding the interpretation of the Plan; (f) to implement the provisions of the Plan and enter orders in aid of confirmation; (g) to adjudicate any and all adversary proceedings and contested matters pending or hereafter commenced in this Chapter 11 case; (h) to enter a final decree closing this Chapter 11 case; for such other matters as may be set forth in the Confirmation Order; and (i) to determine the nature and extent of Debtor's ownership, or rights in property held by the Debtor as of the Petition Date, including but not limited to actions to quiet title.

## ARTICLE XI
## NO DISCHARGE OF DEBTOR

10.01  No Discharge.  In accordance with § 1141(d)(3)(A) of the Code, the Debtor will not receive any discharge of debt in this bankruptcy case.

Respectfully submitted,

EVERGREEN VINTAGE AIRCRAFT, INC.

By:  /s/ Lisa Anderson
Lisa Anderson,
as President of Evergreen Vintage Aircraft, Inc.
The Plan Proponent

By:  /s/ Nicholas J. Henderson
Nicholas J. Henderson OR: 074027
Attorney for the Plan Proponent